**CITY OF FORT DODGE, Iowa, a Municipal Corporation, Appellee,**

v.

**IOWA PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant,**

and

**Local 6–502, Oil, Chemical and Atomic Workers International Union, AFL–CIO, Intervenor.**

No. 61709.

Supreme Court of Iowa.

Feb. 21, 1979.

Rehearing Denied March 15, 1979.

**394**

Richard C. Turner, Atty. Gen., Marie A. Condon, Asst. Atty. Gen. and Hugh J. Perry, Public Employment Relations Bd., for appellant.

Maurice C. Breen, City Atty., Fort Dodge, for appellee.

William F. Sueppel, of Meardon, Sueppel, Downer & Hayes, Iowa City, for amicus curiae League of Iowa Municipalities.

Charles E. Gribble, of Dreher, Wilson, Adams & Jensen, Des Moines, for amicus curiae Iowa State Ed. Ass'n.

Considered by REES, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

LARSON, Justice.

This sole issue to be decided in this appeal is whether clothing, or a clothing allowance, is a mandatory subject of bargaining under Iowa Public Employment Relations Act, chapter 20 of The Code. Local 6–502 of the Oil, Chemical and Atomic Workers International Union, AFL–CIO, is "the employee organization" representing the employees of the City of Fort Dodge.

The City had been requested to furnish items of work clothing (or as the PER Board treated it, a clothing *allowance* for those items). There is no issue here as to its providing protective clothing for employees such as firemen nor uniforms for employees requiring them. These types of clothing had been provided by the city prior to negotiations. The controversy here arose over the union's proposal that certain of its members be furnished items of "everyday" clothing. The trial court in its findings of fact found that "[w]hat the union sought was common work pants and shirts, overalls and jackets for the employees."

The Public Employment Relations Board (PERB) determined the allowance was a mandatory subject of negotiations under § 20.9, The Code, and the city sought judicial review under our Administrative Procedures Act, § 17A.19, The Code. The district court reversed the PERB ruling; on appeal from that action, we affirm. The Iowa State Education Association and the Iowa League of Municipalities, through their amicus curiae briefs have assisted this court in determination of the issue, which is one of first impression.

There have been numerous administrative decisions by the PERB on the scope of mandatory negotiations. Conflicting views on the general philosophies of strict or broad applications of the scope of negotiations have divided legal scholars[1] and promise to furnish a fruitful area for future contention before the PERB and in the courts. The reason for the conflicting views is, primarily, that the legislature has

---

1. For discussion of divergent views of "scope limiters" and "broad scope proponents" *see* Note, *The Scope of Negotiations Under the*    *Iowa Public Employment Relations Act*, 63 Iowa L.Rev. 649, 653–67 (1978).

assumed a greater role in scope determinations in our Act than Congress did in the National Labor Relations Act. This is obvious in comparing the specific "laundry list" of mandatory items of negotiations under § 20.9, The Code, with § 8(d) of the NLRA, 29 U.S.C. § 158(d), and by comparing the list of matters reserved for public employers under the "public employer rights" provisions of Iowa's § 20.7 with the national act, which has no similar provisions.

Section 20.9, The Code, states in part that:

> The public employer and the employee organization *shall* meet at reasonable times, including meetings reasonably in advance of the public employer's budget-making process, to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and *other matters mutually agreed upon.* (Emphasis added.)

Two categories of negotiation topics are created by this section: mandatory (the parties "shall" negotiate as to certain items) and permissive (as to items "mutually agreed upon"). The classification of a particular item is important, because only mandatory items may be taken through statutory impasse procedures to final arbitration, unless the employer consents. Sections 20.-9, 20.10, The Code; PERB Rule 6.1; Pope, *Analysis of the Iowa Public Employment Relations Act*, 24 Drake L.Rev. 1, 33 (1974).

On the other hand, the NLRA provides, as to mandatory items of negotiation, that the parties negotiate "in good faith in respect to wages, hours, and other terms and conditions of employment . . . ." (29 U.S.C. § 158(d)) and stated another way in the Act, to bargain "in respect to rates of pay, wages, hours of employment, or other conditions of employment. . . ." (29 U.S.C. § 159(a)).

The Iowa provisions for "employers' rights," as to which there is no NLRA counterpart, provide in part:

> Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to:
>
> (1) Direct the work of its public employees.
>
> (2) Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.
>
> (3) Suspend or discharge public employees for proper cause.
>
> (4) Maintain the efficiency of governmental operations.
>
> . . . . .
>
> (6) Determine and implement methods, means, assignments and personnel by which the public employer's operations are to be conducted.
>
> (7) Take such actions that may be necessary to carry out the mission of the public employer.
>
> . . . . .
>
> (9) Exercise all powers and duties granted to the public employer by law.

Section 20.7, The Code.

The PER Board, in ruling that this clothing allowance was a mandatory subject of bargaining, stated that:

> We have previously construed the term "wages" in Section 9 of the Act to encompass all types and methods of compensation, including for example, severance pay and moving expenses. Such a construction is, moreover, consistent with the interpretation of the same term in the National Labor Relations Act, as developed through case law by the National Labor Relations Board and the federal courts. Further, the Iowa Act additionally requires bargaining on items of "supplemental pay."
>
> We believe that clothing allowance, as a form of compensation to employees for their labor, constitutes a mandatory subject of bargaining under the categories of wages and supplemental pay.

The Board apparently held the allowance was within both the "wages" and "supplemental pay" provisions of the list.

■ The issue before us is a question of law, one of statutory construction. While we give weight to an agency's construction of a statute, such construction may not make law nor change the legal meaning of a statute. We are not bound by an agency's views of a statute interpreted and applied by it. *West Des Moines Ed. Ass'n v. PERB*, 266 N.W.2d 118, 124–5 (Iowa 1978); *Iowa Dept. Rev. v. Iowa Merit Emp. Comm.*, 243 N.W.2d 610, 613 (Iowa 1976). As PERB stated in its ruling, it had previously used a broad approach in determining what constituted "wages" under the Act. However, agency applications, even of long standing, may not alter the meaning of a statute. *Consolidated Freightways Corp. v. Nicholas*, 258 Iowa 115, 121–2, 137 N.W.2d 900, 905 (1965). In addition, the PERB has not always been consistent in its approach to the scope of mandatory negotiations. It has in at least one case stated that Iowa's laundry list "must be read narrowly." *Bettendorf Community School Dist.*, Iowa PERB No. 598 (1976), page 4.

Clothing allowances are not expressly mandated for negotiations under the laundry list of § 20.9, The Code. Are they "wages" or "supplemental pay" as PERB held?

The term "wages" under the NLRA has been given a broad application, including vacation and holiday pay (*Oughten v. NLRB*, 118 F.2d 486 (3rd Cir. 1941); *Singer Mfg. Co. v. NLRB*, 119 F.2d 131 (7th Cir. 1941)) and insurance and pension plans (*W. W. Cross & Co. v. NLRB*, 174 F.2d 875 (1st Cir. 1949); *United Brick and Clay Workers v. International Union*, 439 F.2d 311, 314 (8th Cir. 1971)).

In *W. W. Cross* the court said, at page 878:

> The word "wages", following the phrase "rates of pay" in the Act must have been intended to comprehend more than the amount of remuneration per unit of time worked or per unit of work produced. We think it must have been meant to comprehend emoluments resulting from employment in addition to or supplementary to actual "rates of pay." This did not necessarily mean that the word "wages" as used in the Act covers all satisfactions, pleasures or gratifications arising from employment such as playing on a company baseball team, or attending a company picnic, or belonging to a company social club, although perhaps under some peculiar circumstances of employment in an isolated plant it might. Nor does our construction of the word "wages" necessarily mean that we construe it as covering "real wages" in all the breadth with which some economists use that phrase.

. . . . .

> [The word "wages"] covers a group insurance program for the reason that such a program provides a financial cushion in the event of illness or injury arising outside the scope of employment at less cost than such a cushion could be obtained through contracts of insurance negotiated individually.

"Wages" is defined as:

> Pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees.

. . . . .

> Syn.—Wages, hire, salary, stipend, pay, emolument.—Wages . . . denote[s] the price paid for labor, esp. by the day or week . . . . Emolument applies to whatever profits arise from office or employment. . . .

Webster's New International Dictionary (2d ed.) (G. & C. Merriam Co. 1952).

■ In attempting to determine the meaning to be given a word used in a statute, we must "examine the statutes and, unless a contrary intention is evident, give the words used their ordinary and commonly-understood meaning. Unless the words are of doubtful meaning, or it appears adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, we are powerless to

search for another meaning." *Consolidated Freightways Corp. v. Nicholas*, 258 Iowa 115, 119–20, 137 N.W.2d 900, 903–4 (1965). Section 4.1(2), The Code, provides that:

> Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning.

The NLRB interpretation of wages, giving the term broad application along the lines of *W. W. Cross* and related cases, could arguably create new meanings for the term as a "technical" word or one which has "acquired a peculiar and appropriate meaning in law" under § 4.1(2), The Code.

If the Iowa legislature has, in effect, adopted the NLRA definition of wages, a clothing allowance would logically be included; if it did not adopt it, it would not be. We conclude the legislature did not adopt the federal interpretation, for these reasons, in addition to the "plain meaning" of the word discussed previously:

(1) *The wording of § 20.9, The Code, compared to the NLRA.*

The differences in the Iowa Act and the NLRA are apparent in the provisions quoted. Iowa's list approach is more specific in its provisions for mandatory negotiations. Items of negotiations held to be "wages" under the NLRA are specifically listed in § 20.9, in addition to wages, as mandatory bargaining items. These include insurance, vacations, holidays, shift differentials, overtime compensation, and supplemental pay. If the legislature had intended to adopt the NLRA approach (which it was invited to do as discussed later), it would not have been necessary to include additional items if the word "wages" included them anyway. The trial court relied, in this respect, upon *Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa 1970) where we said:

2. For collection of other states' statutes dealing with this subject *see* Note, *The Scope of Negotiations Under the Iowa Public Employment*

Effect must be given, if possible, to every word, clause and sentence of a statute. It should be construed so that effect is given to all its provisions and no part will be inoperative or superfluous, void or insignificant.

Adopting PERB's construction of the word "wages" would make several of the specific negotiation topics set out above "inoperative, superfluous or insignificant."

Professor Pope, in his article, *Analysis of the Iowa Public Employment Relations Act*, 24 Drake L.Rev. 1, 33–34 (1974) concludes the "laundry list" of the Iowa statute is definitional, not merely descriptive, and that "[w]here the General Assembly goes to the trouble of providing a list, it generally means to exclude those topics and terms not on the list." The NLRA on the other hand, has not provided a list. It relies upon a broad definition of "wages" to encompass any non-cash items. Other states' statutes compare substantially to the NLRA [2].

■ We conclude that our legislature did not adopt the broad NLRA definition of "wages" and that this term as used in Iowa's act is to be applied in its commonly understood meaning and context.

(2) *Section 20.9 as listing exceptions to § 20.7 "employer rights."*

■ As previously discussed, Iowa's Employment Relations Act is unique, not only for its "laundry list" approach but also because of the broad rights reserved to employers. As Professor Pope has stated,

> Section 9 [now § 20.9, The Code] must be viewed in conjunction with section 7 of the Act. . . . [S]ection 7 [now 20.7] contains an extremely broad list of employer rights. Nearly all legitimate functions of a public employer are covered. Section 9 should properly be viewed as providing exceptions to section 7. Therefore as with most exceptions, if a subject is not specifically listed, it must be as-

*Relations Act*, 63 Iowa L.Rev. 649, 667, n. 153 (1978).

sumed that the intent of the legislature was to exclude it. *Pope, supra*, at p. 34. He also said that:

> The existence of section 7 public employer rights might be used to buttress the argument that the "shopping list" of subjects specifically identified as negotiable in section 9 of the Act is an exclusive list. . . . [S]ection 7 might be evidence of a legislative intent to narrow, by specific enumeration, the scope of negotiable subjects. *Pope, supra*, at p. 11.

(3) *Legislative history of the Act.*

The original version of the bill, Senate File 531, contained as part of the list, a clause similar to the NLRA, "and other terms and conditions of employment." If it had been adopted, this clause is viewed as "opening up greatly the category of mandatory subjects." *Pope, supra*, at p. 34. This language was stricken, and the "laundry list" substituted for it, evidencing an intention to restrict the scope of mandatory subjects. Amendment H–2278, House Journal 65th G.A., 2d Sess. 671–72. Also relevant is the ˙wording of the 1970 bill, Senate File 1084, providing as mandatory items, "wages, salaries *and other economical benefits*, hours or periods of service, and other conditions of employment. . . ." (Emphasis added.) This bill was not enacted into law. We have recently recognized the significance in wording changes between the version of an act which dies at the conclusion of one General Assembly and that which is enacted by a subsequent legislature. *Iowa State Ed. Ass'n v. PERB*, 269 N.W.2d 446 (Iowa 1978). In particular, we said that when a term which appeared in the first version is not in the act, "[w]e have to assume this absence was deliberate." 269 N.W.2d at 448. Clearly, the clothing allowance would fall within the purview of "other economic benefits." The absence of that language from the act evidences the intent of the legislature to restrict the scope so as to exclude this subject from the list of mandatory bargaining.

■ We conclude a clothing allowance (or furnishing of clothing in kind) is not a mandatory subject of bargaining under the "wages" provision of § 20.9, The Code. Is it includable in the subject of "supplemental pay" under that section, as contended by the appellants?

The trial court said as to this matter that:

> [t]he term used in the statute is "supplemental *pay*," not "supplemental benefit." Accordingly, the clothing allowance proposal·is not, in this court's view, a mandatory subject of bargaining and the PER Board was incorrect in so ruling.

For the same reasons we conclude that "wages" did not include the allowance, we also conclude that it could not be considered "pay" under the act. It appears that the legislature intended the terms used in § 20.9, The Code, to have a restrictive and narrow application. To conclude that a clothing allowance is supplemental pay under the Act would stretch that term beyond its parameters obvious from a reading of it and from a consideration of its legislative history.

We affirm the trial court.

AFFIRMED.

All Justices concur except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

I. Even the most restrictive definition of wages does not limit compensation to cash. It is one thing to say wages are *usually* a payment of money but quite another to say they are *always* a payment of money.

Our decision in this case does not depend upon whether we adopt the NLRA definition of wages as opposed to the ordinary definition of the word. This is because payment of wages may be made in kind rather than cash even under the ordinary definition. See *Pacific American Fisheries, Inc. v. United States*, 138 F.2d 464, 465 (9 Cir. 1943) ("Generally speaking, the term wages means compensation for labor or services, which may be in the form of money paid or other value given, such as board, lodging or clothes."); *Jackson v. Clintsman*,

91 Ariz. 314, 372 P.2d 204 (1962); *Schumann v. California Cotton Credit Corporation*, 105 Cal.App. 136, 140, 286 P. 1068, 1070 (1930) ("Wage is compensation for services rendered, and this compensation may take the form of money paid or other value given, such as board, lodging, or clothes."); *St. Paul Fire & Marine Insurance Co. v. Richard*, 208 So.2d 35, 39 (La.App.1968); *Goodman v. Moss*, 43 N.Y.S.2d 381, 385 (N.Y.Sup. Ct.1943) (" 'Wages' is the price paid for services, and includes not only money but even board, lodging and clothes."); 92 C.J.S. Wage at 1038 ("may include not only money but board, lodging or clothes"); Webster's Third New International Dictionary; Black's Law Dictionary (Rev. Fourth Ed.).

The employees in the present case wished to receive a portion of their compensation in kind rather than cash. In pursuing this objective they were seeking to negotiate wages, a mandatory subject of bargaining. I would so hold.

II. Apart from this, I believe the court's narrow and restrictive interpretation of the terms identifying mandatory bargaining subjects in Code § 20.9 violates the requirement of § 4.1(2) that Code terms "be construed according to the context and the approved usage of the language." I agree the legislature did not adopt the broad scope of mandatory bargaining provided in the NLRA. However, this does not automatically require that the terms in § 20.9 be given a narrow and restricted meaning. Instead I believe § 4.1(2) requires that these terms be given their ordinary meaning.

This result is also supported by the mandate of § 4.2 that the Code's "provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." We have no basis in the Code or in the legislative history of the PER Act for believing the legislature did not intend the statute to be implemented in accordance with the plain and ordinary meaning of its terms.