319 N.W.2d 181 (1982)
FORT DODGE COMMUNITY SCHOOL DISTRICT, Appellee,
v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant, and
Fort Dodge Education Association, Intervenor-Appellant.
No. 65796.
Supreme Court of Iowa.
May 19, 1982.
Thomas J. Miller, Atty. Gen., Frank J. Stork, Asst. Atty. Gen., and Hugh Perry, General Counsel, Des Moines, for appellant Public Employment Relations Bd.
Charles E. Gribble, of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for intervenor-appellant, Fort Dodge Education Assn.
Rick Engel, Fort Dodge, for appellee.
Edgar H. Bittle & Terry L. Monson, of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for the Iowa Association of School Boards, Inc., amicus curiae.
Considered en banc.
LARSON, Justice.
Faced with the problem of declining enrollment, the Fort Dodge Community School District adopted a plan providing cash incentives for early retirement for teachers sixty years of age or older. Adoption of the plan evoked a prohibited practice complaint before the Public Employment Relations Board under chapter 20, *182 The Code 1979, by the Fort Dodge Education Association, asserting that the plan was a mandatory subject of bargaining under section 20.9 and that the district had violated the act by unilaterally adopting it. The hearing officer, and a majority of the Public Employment Relations Board, agreed and ordered the district to negotiate the plan with the association. The district sought judicial review of the board's decision, § 17A.19, and the district court reversed. On appeal to this court by the board and the association,[1] we affirm.
The case was presented upon the following stipulated facts. The association is an "employee organization" as defined in section 20.3(4), and is certified to represent the professional, non-supervisory employees within the district; the district is a "public employer," as defined in section 20.3(1). In 1979, while the association and the district were parties to a collective bargaining agreement, the district unilaterally adopted a policy "to encourage early retirement on the part of bargaining unit members . . . which provide[d] for the payment of cash bonuses to teachers accepting early retirement," and refused to negotiate with the association on the matter.
The plan provided in part:
A teacher [with at least ten years experience in Fort Dodge] who accepts early retirement will receive the following cash benefits on July 1, 1979:
A. Age 60: $2,000.00 plus 100% of the difference between $10,000 and the employee's position on the 1978-1979 salary schedule.
B. Age 61: $2,000.00 plus 90% of the difference between $10,000 and the employee's position on the 1978-1979 salary schedule.
C. Age 62: $2,000.00 plus 80% of the difference between $10,000 and the employee's position on the 1978-1979 salary schedule.
D. Age 63: $2,000.00 plus 70% of the difference between $10,000 and the employee's position on the 1978-1979 salary schedule.
E. Age 64: $2,000.00 plus 60% of the difference between $10,000 and the employee's position on the 1978-1979 salary schedule.
At the initial hearing a district administrative assistant, who was primarily responsible for drafting the plan, testified on its objectives:
We believed that some sort of a retirement income plan would soften the crisis of declining enrollment, which would require a reduction in staff. [The financial impact of the plan is that it] gives a percentage of the difference between a [veteran teacher's] salary and that of a [beginning teacher's] salary . . . [and thus] it is entirely possible that it could be a savings of up to $6000-$7000 per teacher.
He further testified that although the first year's savings would only amount to $1279, savings would rise to $30,000-$35,000 the second year. On the basis of this testimony, the hearing officer found the purpose of the plan "was to soften the declining enrollment crisis which threatens to cause staff reductions . . ., [to] save jobs for younger teachers, and [to] provide financial benefits to the district." He concluded that the plan was a mandatory subject of bargaining under section 20.9 and that the district had acted improperly in adopting it without negotiation.
I. Scope of section 20.9.
Section 20.9 provides:
The public employer and the employee organization shall meet at reasonable times, including meetings reasonably in advance of the public employer's budget-making process, to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and *183 safety matters, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon.
(Emphasis added.) The statute was first discussed by this court in City of Fort Dodge v. Public Employment Relations Board, 275 N.W.2d 393, 397 (Iowa 1979), which held it is to be narrowly applied. Subsequent cases have agreed. E.g., Marshalltown Education Association v. Public Employment Relations Board, 299 N.W.2d 469, 470 (Iowa 1980); Charles City Education Association v. Public Employment Relations Board, 291 N.W.2d 663, 667 (Iowa 1980); Charles City Community School District v. Public Employment Relations Board, 275 N.W.2d 766, 773 (Iowa 1979).
Despite these decisions, contrasting views of the scope of section 20.9 have remained and are illustrated by the split decision in the present case. A majority of the board held the early retirement incentive plan was a form of supplemental pay: "It is, quite simply, a provision for a supplemental cash payment to teachers to be paid at their retirement, with the amount of the payment determined by their age and length of service." Even given the restrictive definition of wages and supplemental pay established by City of Fort Dodge, 275 N.W.2d at 397, 398, the majority concluded there was a service rendered here: viz., the teachers retired early to help alleviate budgetary problems. The dissent took a more restrictive view of the statute: that the "pay" referred to in section 20.9 must actually be a supplement to, or in addition to, other payments for services rendered, and that the "service" rendered by early retirement was not the sort envisioned by the legislature. The district court agreed with the latter view.
The association urges us to reassess our oft-expressed view that the list of mandatory subjects of bargaining is to be restrictively applied, arguing there is no evidence the legislature intended such a construction. As noted above, however, we have concluded the act's wording and legislative history indicated an intent to retain broad employer rights and to carve out specific, narrowly defined, exceptions for mandatory negotiation. We further note the legislature has declined to make any changes in the statute which would indicate our view on its scope was erroneous. Under such circumstances, we do not depart from our earlier case law.
II. Application of section 20.9.
The association argues the early retirement compensation plan is a mandatory subject of bargaining because it is both "wages" and "supplemental pay" under the statute. The board contends it is only includable as "supplemental pay." The district and the Association of School Boards, Inc., amicus curiae, argue it is neither wages nor supplemental pay under the statute, and the district court agreed.
Whether a particular proposal is a mandatory subject of bargaining is of considerable significance: If it is a mandatory one it carries with it enforcement through impasse and grievance procedures. §§ 20.9, .10; see City of Fort Dodge, 275 N.W.2d at 395. We have employed a two-step analysis for determining whether a proposal falls within the scope of mandatory bargaining: first, it "must come within the meaning of one of the subjects listed in section 20.9," and second, "there must be no legal prohibition against bargaining on the particular topic." Charles City Education Association, 291 N.W.2d at 666.
A. The plan as "wages." We have said wages under the statute means "a specific sum or price paid by an employer in return for services rendered by an employee," id. at 668; and, adopting a dictionary definition, we have said that it also means "pay, given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees, [and denotes] the price paid for labor, especially by the day or week," City of Fort Dodge, 275 N.W.2d at 396.
We are convinced the legislature did not intend to give "wages" the broad application contended for here. If it had intended to include all "wage-related" remunerations of all species within the term "wages," it *184 would have been unnecessary to include in the list of mandatory subjects so many wage-related items such as insurance, vacations, overtime compensation, and supplemental pay. See § 20.9; City of Fort Dodge, 275 N.W.2d at 397. In its commonly understood meaning wages would not include payment for services not rendered or labor not performed.
B. The plan as "supplemental pay."
The majority decision of the board proposed a construction of supplemental pay broader than that previously adopted by us which, according to it, would "encompass not only traditional forms of supplemental pay, but also innovative attempts to link teacher compensation to the public interest goals of a school district, as in the case of an early retirement program." However, we do not believe the legislature intended matters of possible negotiation to be made mandatory simply because they are linked to the public-interest goals of the district; subjects of bargaining could be almost unlimited.
Both the association and the board contend the staff reduction incentive plan is a mandatory subject of bargaining because it involves supplemental pay under section 20.9. They argue "supplemental pay" must have been intended to be distinguishable from "wages." Otherwise, they argue, there was no reason for the legislature to have included both in the statute; one of them would be surplusage, according to that view.
In City of Fort Dodge, 275 N.W.2d at 396-97, we noted "pay" and "wages" are used interchangeably. We believe that the term supplemental pay refers to pay for services rendered, and that the "service" rendered by early retirement is not the type of service envisioned by the legislature. Public employees, such as teachers, who are considered professional employees and thus not qualifying for "shift differentials" or "overtime compensation" under the act nevertheless may qualify for additional pay for services rendered over and above the pay for the primary duties of their contract. An obvious example is a teacher who performs extra duties as a coach.
At any rate, the term supplemental pay means pay for rendering a service; it does not appear to be intended as payment for not working. In other words, it is pay based upon extra services and directly related to the time, skill, and nature of those services. It is not intended to be tied solely to a person's age, as the cash incentive plan is here.
This view is consistent with the reasoning in Fairlawn Education Association v. Fairlawn Board of Education, 79 N.J. 574, 401 A.2d 681, 684 (1979):
Under the [retirement] plan here at issue, payments are geared to age, not service. Moreover, the sums to which instructors are entitled decrease as length of service increases. It is thus clear that the parties to this contract intended to reward early retirement rather than the amount and quality of work that a particular teacher had performed. As such, these payments are not authorized by [the statute permitting a school board to set the "terms and tenure of employment, . . . salaries and time and mode of payment thereof."]
III. Other issues.
The district argues that this plan, even if a mandatory subject of bargaining, is a "retirement system," which is excluded from negotiation by section 20.9. Because we have concluded it is not a mandatory subject of bargaining, we do not address the issue. The association, on the other hand, argues it is a staff-reduction procedure and thus a separate mandatory subject of bargaining under section 20.9. This argument was not presented below and therefore we will not address it on appeal.
We find no error in the ruling of the district court.
AFFIRMED.
All Justices concur except McCORMICK and HARRIS, JJ., who dissent and ALLBEE, J., who takes no part.
McCORMICK, Justice (dissenting).
I would hold that compensation for early retirement is a mandatory subject of bargaining *185 because it is supplemental pay. The court's contrary holding appears to be based on a continuing policy of construing the Public Employment Relations Act strictly against the bargaining rights of public employees. I believe this policy is contrary to legislative intent and leads to an incorrect result in this case.
I. Approach to construction. The court started down its present path in City of Fort Dodge v. PERB, 275 N.W.2d 393 (Iowa 1979), and Charles City Community School District v. PERB, 275 N.W.2d 766 (Iowa 1979). In those cases the court recognized that the mandatory bargaining topics in section 20.9 constitute exceptions to the employer rights enumerated in section 20.7. The court concluded that the list of topics was exclusive and definitional rather than descriptive. This conclusion finds reasonable support in the language and legislative history of the statute.
Instead of stopping there, however, the court adopted two rules of construction that have no support in the language or legislative history of the statute and are contrary to general rules of statutory construction. One rule is to give a narrow meaning to the enumerated bargaining topics, and the other is to require a "balancing" of the bargaining right against the employer rights under section 20.7. See Charles City, 275 N.W.2d at 773-75; City of Fort Dodge, 275 N.W.2d at 398. The restrictive approach to definitions was confirmed in Marshalltown Education Association v. PERB, 299 N.W.2d 469, 470 (Iowa 1980), and the balancing test was confirmed in Charles City Education Association v. PERB, 291 N.W.2d 663, 666 (Iowa 1980).
The rule giving restrictive definitions is contrary to the legislative mandate in section 4.1(2) that terms "be construed according to the context and approved usage of the language." The mere fact that the legislature adopted a "laundry list" or definitional approach to mandatory bargaining subjects does not dictate restrictive definitions. Because nothing in the context justifies departure from the regular canon of construction, I believe the court is mistaken in giving narrow definitions to bargaining topics.
The definition of "wages" provides an example of the incongruity of restrictive definitions. In City of Fort Dodge, the court shunned the ordinary notion that compensation can be paid in kind rather than cash. In the second Charles City case, the court repeated and applied a definition equating the term with pay for labor, "usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees." 291 N.W.2d at 668. It is difficult for me to believe the legislature would so characterize the work of all public employees, whether they be custodian, policeman, or professor. Even school boards would probably be surprised to learn that wages are to be distinguished from salaries.
The court in City of Fort Dodge and the second Charles City case expressed a commitment to giving the bargaining subjects their ordinary meaning. See 291 N.W.2d at 668 and 275 N.W.2d at 396-97. A contrary intention was expressed in the first Charles City case and the Marshalltown case. See 299 N.W.2d at 470 and 275 N.W.2d at 773. All four cases, however, applied restrictive definitions in fact. I believe the court was right in its statement of the rule in City of Fort Dodge and the second Charles City case but wrong in its restrictive definitions in all four cases.
I also believe the "balancing test" is an unwarranted judicial imposition on the statute. Once it is recognized that the bargaining topics in section 20.7 are exceptions to employer rights in section 20.9, no occasion for balancing exists. In creating the exceptions, the legislature has already balanced whatever interests it deemed significant. It is a contradiction to assert that the topics in section 20.7 are exceptions to employer prerogatives but yet are not exceptions unless PERB or a reviewing court finds the employee interest in bargaining outweighs the public employer's interests in its section 20.7 rights. It is also fallacious to omit statutory employee rights in section 20.8 from any balancing process.
*186 The result is not merely recognition of a legislative intent to have a short list of mandatory bargaining topics. The court's approach also narrows the scope of each topic. If the topic survives the definitional test, it must then confront the balancing test, where any conflict is resolved against the employee. I believe this approach is a palpable frustration of legislative intent.
II. The question in this case. The record shows PERB has interpreted supplemental pay as meaning any cash payment to an employee in addition to the employee's regular wages. As a consequence, the board has recognized the bonus for early retirement, moving expenses, travel allowances, tuition reimbursement and compensation for unused sick leave as supplemental pay. To me this is a tenable interpretation of the bargaining subject. It is one that the agency arrived at while attempting to give effect to this court's prior definitional standards. It conforms with common sense and the ordinary meaning of the concept. If the rule of deference to agency constructions of the statute has any meaning, this is a case in which it should be applied.
The effect of the court's holding is to deprive the concept of supplemental pay of a definition. Rather than define the term, the court gives an example based on an assumed distinction between primary and secondary duties under a contract. No basis for such a distinction appears in the statute or in the record in this case. The distinction is neither meaningful nor workable. We are left with a holding that supplemental pay is a form of wages as that term has been restrictively defined by the court. Because the subject of wages is separately listed, the supplemental pay topic has no independent significance.
I would reverse the district court.
HARRIS, J., joins this dissent.
NOTES
[1] The association became a party to this action after the district court granted its application for intervention, Iowa R.Civ.P. 75.