**IOWA CITY ASSOCIATION OF FIRE FIGHTERS, IAFF LOCAL 610,**
Appellant,

v.

**IOWA PUBLIC EMPLOYMENT RELATIONS BOARD,**
Appellee,

and

**City of Iowa City, Intervenor–Appellee.**

No. 95–1377.

Supreme Court of Iowa.

Oct. 23, 1996.

MacDonald Smith of Smith, McElwain & Wengert, Sioux City, for appellant.

M. Sue Warner, Des Moines, for appellee.

Steven B. Rynecki of von Briesen & Purtell, S.C., Anne G. Burnside, and Sarah E. Holecek, Iowa City, for intervenor–appellee.

LARSON, Justice.

This is a consolidated appeal involving disputes between the Iowa City Association of Professional Fire Fighters, IAFF Local 610 (union), and the City of Iowa City concerning the negotiability of two contract proposals by the union. The Public Employment Relations Board (PERB) ruled that the proposals were permissive, rather than mandatory, subjects of bargaining under Iowa Code section 20.9 (1993). On judicial review, the district court ruled against the union on one of its proposals and against the City on the other. The union appealed and PERB and the City cross-appealed. We affirm on the appeal and reverse on the cross-appeal.

The union serves as the certified bargaining representative of the fire fighters, fire lieutenants, and fire captains employed by the Iowa City Fire Department. The union requested a contract provision, which it characterizes as an "hours proposal," for inclusion in its contract with the City:

Item 23.

Add the following to Article V, Section 1:

The normal workday will consist of twenty-four hours on duty (Commencing at 0700 hours). Active work time within the normal workweek shall be from 0700—1600 hours on Mondays, Tuesdays, Wednesdays, Thursdays and Fridays. Each employee shall be granted two (2) fifteen (15) minute rest periods during the period of active work time, in addition to a lunch period. The lunch period shall be from 1130 to 1300 hours. Ready time shall be the hours of the normal workday that do not consist of active work time. This time shall commence at 1600 hours and shall continue through the end of the employee's shift.

Active work time within the normal workday shall be from 0700 to 1130 on Saturdays. Each employee shall be granted one (1) fifteen minute rest period during the period of active work time. Ready time shall be the hours of the normal workday that do not consist of active work time. This time shall start at 1130 hours and will continue through until the end of the employee's shift.

Employee shifts that occur on Sundays or recognized holidays shall consist of twenty-four hours ready time.

For the purpose of clarity active work time shall be considered when an employee is on duty and subject to assignment of routine duties necessary to operate the fire department. These could include routine station duties, apparatus checks, inspections, training, equipment maintenance, etc.

Ready time shall be considered the hours of a normal workday that do not consist of active work time. During this period, the employee remains on duty, in the appropriate uniform and is ready to respond to emergencies. Duties performed during ready time will include emergency response and other duties necessary to immediately return a fire company to a ready status (i.e., reload hose, refill SCBA tanks, refill booster tanks, replace needed equipment, etc.).

The City filed a petition for declaratory ruling by PERB on the negotiability of this proposal, and the union intervened. The City argued that the hours proposal was a merely permissive subject of bargaining un-

der Iowa Code section 20.9, and the union contended that it was a mandatory subject. PERB declared this proposal to be a permissive subject of bargaining. The union filed a petition for judicial review.

In preparing to negotiate another collective bargaining agreement, the union again submitted the "hours" proposal set out above and, in addition, proposed a "premium pay" provision:

Item 24.

The Union proposes a new Section 5 as part of Article XXVIII which states:

The city shall pay a twenty-five percent premium for "ready" time hours where management elects to exercise its right to assign traditional "active" time work.

"Active" time on Monday through Friday is defined to include all time between 7 a.m. and 4 p.m. except for a one-hour lunch break determined by management.... On Saturday and Sunday, "active time" includes all hours from 7 a.m. to noon. All other time, including all hours worked on holidays, is defined to be "ready time."

For purposes of clarity active work time shall be considered when an employee is on duty and subject to assignment of routine duties necessary to operate the fire department. These include routine station duties, apparatus checks, inspections, training, equipment maintenance, etc.

Ready time shall be considered the hours of normal workday that do not consist of active work time. During this period the employee remains on duty, in the appropriate uniform and ready to respond to emergencies. Duties performed during ready time would include emergency responses and other duties necessary to immediately return a fire company to ready status (*i.e.*, reload hose, refill SCBA tanks, refill booster tanks, replace needed equipment, etc.).

The City challenged this proposal and requested a PERB ruling that it was a permissive subject of bargaining rather than mandatory. The City argued, as it did with respect to the "hours" proposal, that this contract provision would impinge on the

City's exclusive managerial rights under Iowa Code section 20.7. PERB agreed.

The union petitioned for judicial review, and the district court consolidated the proceedings involving the "hours" and "premium pay" proposals. The district court concluded that the "hours" proposal indeed infringed on the exclusive authority of the employer set out in section 20.7 and therefore ruled that this was a permissive subject of bargaining. However, the court reversed PERB's ruling on the premium pay proposal, concluding that it was a mandatory subject of bargaining.

### I. *The Law.*

Two sections of our Public Employment Relations Act are involved: Iowa Code section 20.7, which grants certain rights exclusively to public employers, and section 20.9, which *requires* the parties to negotiate on certain subjects and *permits* negotiation on others. Section 20.7 provides:

Public employers shall have ... the exclusive power, duty, and the right to:

1. Direct the work of its public employees.

....

4. Maintain the efficiency of governmental operations.

5. Relieve public employees from duties because of lack of work or for other legitimate reasons.

6. Determine and implement methods, means, assignments and personnel by which the public employer's operations are to be conducted.

7. Take such actions as may be necessary to carrying out the mission of the public employer.

....

9. Exercise all powers and duties granted to the public employer by law.

Iowa Code section 20.9 provides:

The public employer and the employee organization shall meet ... to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, trans-

fer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon. . . . Such obligation to negotiate in good faith does not compel either party to agree to a proposal or make a concession.

In the present case, the union contends that both of its proposals are mandatory subjects of bargaining: the first because it deals with hours and the second because it deals with pay. The City responds that, while true hours and pay proposals are mandatory subjects of bargaining, the proposals in this case infringe on the City's exclusive management rights and are merely dressed up as hours and pay proposals.

Since our earliest cases under chapter 20, we have adhered to a strict reading of the "laundry list" of mandatory subjects of bargaining under section 20.9. In *City of Fort Dodge v. Iowa PERB*, 275 N.W.2d 393 (Iowa 1979), we illustrated this narrow interpretation by holding that a clothing allowance in kind was not "wages" and thus not a mandatory subject of bargaining under section 20.9. *Fort Dodge*, 275 N.W.2d at 398. At the same time the *Fort Dodge* case was decided, we decided *Charles City Community School District v. PERB*, 275 N.W.2d 766 (Iowa 1979), which also evidenced a narrow interpretation of section 20.9. *See Charles City*, 275 N.W.2d at 773.

In adopting this interpretation of section 20.9, we examined the legislative history of chapter 20, which showed that the legislature rejected the broad scope of mandatory bargaining ("wages, hours, and other terms and conditions of employment") found in the National Labor Relations Act, 29 U.S.C. § 158(d). *Charles City*, 275 N.W.2d at 772–73; *Fort Dodge*, 275 N.W.2d at 395. In addition, the exclusive rights of employers under section 20.7 to direct the work of its public employees and to determine and implement methods, means, and assignments to carry out the work of the employer gave employers greater authority than does the federal counterpart. *Fort Dodge*, 275 N.W.2d at 395.

We have adhered to this strict interpretation with at least the tacit approval of the legislature in the seventeen years since the *Fort Dodge* and *Charles City* cases. *See, e.g., State v. PERB*, 508 N.W.2d 668, 672 (Iowa 1993); *City of Dubuque v. PERB*, 444 N.W.2d 495, 497 (Iowa 1989); *Fort Dodge Community Sch. Dist. v. PERB*, 319 N.W.2d 181, 183 (Iowa 1982).

*State v. PERB* sets forth guidelines for determining whether a subject is mandatory:

We determine on a case-by-case basis whether the proposal at issue logically belongs in a section 20.9 mandatory bargaining category, or whether the proposal falls within the broad sphere of management rights reserved to public employers under section 20.7. This analysis is tempered by our predisposition toward construing the scope of 20.9 mandatory bargaining subjects restrictively.

Whatever the form of the proposal, our only task is to determine whether the proposal, *on its face*, fits within a definitionally fixed section 20.9 mandatory bargaining subject. In determining the scope of the topic of a disputed proposal we look to what the proposal, if incorporated through arbitration into the collective bargaining contract, would bind an employer to do.

508 N.W.2d at 672–73 (citations omitted).

With these legal principles in mind, we look to the negotiability of the union's proposed "hours" and "premium pay" provisions set out above.

## II. *The "Hours" Proposal.*

As to Item 23, the "hours" proposal, the parties agree that some of it is subject to mandatory bargaining. Those include the total hours to be included in a workday, the starting and quitting times, and break times. These provisions are not in dispute.

The dispute centers on Item 23's restrictions on what jobs may be assigned to employees at certain times during the workday. Under the union's proposal, the workday would be divided into two categories. "Active" work time and "ready" work time are defined, and the duties during these respective times are prescribed. Active work time

is between 0700 and 1600 on weekdays and 0700 and 1130 on Saturdays. Under the union's proposal, the employer's assignment of duties during active time "could include routine station duties, apparatus checks, inspections, training, equipment maintenance, etc." All hours of the workday outside active time could be considered "ready" time. The proposal then lists the duties that would be assigned during these times, including "emergency response[s] and other duties necessary to return to ready status (*i.e.,* reload hose, refill SCBA tanks, refill booster tanks, replace needed equipment, etc.)."

■ By attempting to divide the workday in this manner and prescribe what duties would normally be performed during this time, the proposal clearly impinges on the employer's right to direct the work of its employees and cannot be considered a mandatory subject of bargaining.

In *Charles City,* the issue was whether the employees' proposal that grievance commission members be allowed to investigate and process grievances while on the pay clock was a "grievance procedure," which is included in the laundry list of mandatory bargaining subjects under section 20.9. The City argued that it was part of an employer's exclusive right to direct the work of its employees. We agreed with the City because a requirement for payment of wages for grievance work did not constitute a grievance *procedure* under section 20.9. In addition, we said:

> If the word "exclusive" in § 20.7 is to have its ordinary meaning relative to the right to direct work of employees, the employer should not be compelled to bargain on a proposal that the employee members of the grievance committee be allowed to utilize work time to investigate and handle grievances rather than produce work for the employer. To require bargaining on processing grievances during work hours without loss of pay to grievance committee members limits the authority expressly granted to the employer under § 20.7. If § 20.7 and § 20.9 are to be harmonized,

the proposal must be a permissive subject of bargaining rather than mandatory.

*Charles City,* 275 N.W.2d at 775.

We agree with PERB and the district court in this case that the proposal in question would in effect prescribe what duties could be performed during certain times of the day and would therefore impinge on the employer's exclusive right to direct the work of its employees under section 20.7. We affirm on this issue.

### III. *The "Premium Pay" Issue.*

■ This proposal, by providing for a twenty-five percent "pay premium" for "ready" time when the employer exercises its right to assign traditional active work, appears to preserve the exclusive right of the employer to assign work. The union argues that there is therefore no conflict with the exclusive right of assignment of duties given to the employer by section 20.7. Moreover, the union argues that this is a mandatory subject of negotiation because it concerns wages, shift differentials, overtime compensation, or supplemental pay. We believe this proposal infringes on the employer's right to direct its employees' work for the reasons discussed in Division II.

Moreover, we agree with PERB that this was not a question of shift differential because the work to be assigned and the compensation apply to work within a single shift. Also, the proposal cannot be said to cover overtime because it applies only to regular working hours. Supplemental pay, another mandatory subject of bargaining, is also not involved; as we said in *Fort Dodge Community School District,* supplemental pay is that pay based on *extra* services rendered. 319 N.W.2d at 184. The services covered by this proposal are not extra; they are services that are a normal part of the fire fighter's job.

We believe that the district court erred in reversing PERB on this issue, and we therefore reverse. We remand for entry of an order affirming the ruling by PERB.

**AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL; REMANDED WITH INSTRUCTIONS.**

All justices concur except CARTER, HARRIS, and LAVORATO, JJ., who dissent, and TERNUS, J., who takes no part.

CARTER, Justice, dissenting.

I dissent. I would affirm on both issues. For reasons described in the dissenting opinion in *Fort Dodge Community School District v. PERB*, 319 N.W.2d 181, 184–86 (Iowa 1982), I believe that the rule of strict construction applied by the court goes beyond a recognition of the legislature's intent to have a short list of mandatory bargaining topics and unduly narrows the scope of each topic based on the court's own view of the matter. I submit that the premium pay sought by these public employees does fit the general description of wages. As the majority concedes, it is remuneration for services that are a normal part of the fire fighter's job.

HARRIS and LAVORATO, JJ., join this dissent.