**WATERLOO COMMUNITY SCHOOL DISTRICT, Appellee,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Waterloo Education Association, and Waterloo Educational Support Personnel, Appellants.**

No. 01–0494.

Supreme Court of Iowa.

Sept. 5, 2002.

Gerald L. Hammond, Des Moines, for appellants Waterloo Education Association and Waterloo Educational Support Personnel.

Jan V. Berry, Des Moines, for appellant Public Employment Relations Board.

Brian L. Gruhn of Gruhn Law Firm, P.C., Cedar Rapids, for appellee.

CARTER, Justice.

The issues on this appeal involve whether four collective-bargaining proposals presented to the Waterloo Community School District (school district) by two employee labor organizations, Waterloo Education Association and Waterloo Educational Support Personnel, are the subjects of mandatory collective bargaining under Iowa Code section 20.9 (1999). These proposals relate to (1) employee evaluations and the school district's criteria therefor, (2) the time and place of wage payments, (3) additional compensation for employees teaching more than 300 minutes per day, and (4) a plan for employees to pool their sick leave subject to specified procedures.

The PERB determined that all of the foregoing items were subjects of mandatory collective bargaining. The school district sought judicial review of that determination pursuant to Iowa Code section 17A.19. On that review, the district court concluded that items (3) and (4) above were the subject of mandatory bargaining and items (1) and (2) were not. The school district, PERB, and the two employee labor organizations have all appealed those portions of the district court's judgment that were adverse to their respective contentions.

After reviewing the record and considering the arguments presented, we conclude that items (2) and (4) above are subjects of mandatory bargaining and that items (1) and (3) are not. Consequently, we reverse the district court's conclusions as to items (2) and (3) and affirm its conclusions as to items (1) and (4).

### I. *Scope of Review.*

■ Our review under Iowa Code section 17A.19 requires us to apply the standards for review of agency decisions under that statute and determine whether our conclusions are the same as the district court's. *Foods, Inc. v. Iowa Civil Rights Comm'n*, 318 N.W.2d 162, 165 (Iowa 1982); *Jackson County Pub. Hosp. v. PERB*, 280 N.W.2d 426, 429–30 (Iowa 1979).

### II. *General Analysis of Collective Bargaining Under Iowa Code Chapter 20.*

■ Iowa Code chapter 20 governs collective bargaining between public employers and public employees. The negotiable issues are identified in Iowa Code section 20.9, which states:

> The public employer and the employee organization shall meet at reasonable times, including meetings reasonably in advance of the public employer's budget-making process, to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon.

This section creates two types of negotiable subjects: (1) mandatory subjects of bargaining, and (2) permissive subjects of bargaining. *Decatur County v. PERB,*

564 N.W.2d 394, 396 (Iowa 1997); *City of Fort Dodge v. PERB.*, 275 N.W.2d 393, 395 (Iowa 1979). Only mandatory subjects of bargaining may proceed through statutory impasse procedures to final arbitration, unless the employer consents. *Decatur County*, 564 N.W.2d at 396.

■ In determining whether a proposal is a mandatory subject of bargaining, the court applies a two-step test. *Id.* First, the proposal must come within the meaning of the subjects listed in section 20.9. *Id.* Second, the proposal must not be illegal under any other provision of law. *Id.* The issue in this matter concerns the application of the first step.

■ Several rules govern the court's determination of whether a proposal is a mandatory subject of bargaining under section 20.9. *Id.* The court looks only to the subject matter and not to the merits of the proposal. *Id.* The subjects listed in section 20.9 are to be construed narrowly and restrictively. *Id.* at 397. The question is really whether the proposal, "on its face, fits within a definitionally fixed section 20.9 mandatory bargaining subject." *Id.* (quoting *State v. PERB*, 508 · N.W.2d 668, 673 (Iowa 1993)). The scope of a disputed proposal is to be determined by examining what the proposal would bind the employer to do if adopted by the arbitrator. *Id.*

### III. *The Teacher Evaluation Proposal.*

■ The first proposals to be considered provide:

A. Evaluation Criteria

> The employee will be evaluated solely on work performance by comparing the employee's performance with the employee's written job description, and by utilizing the mutu-

ally agreed upon evaluation instrument. All evaluations shall be fair and accurate.

B. Procedure

1. c. Specific criteria being used in the evaluation will be given to the employee in writing.

. . . .

4. Each completed Evaluation Report form shall include an overall assessment of "satisfactory performance" or "unsatisfactory performance."

C. Procedure

. . . .

6. Each completed Evaluation Report Form shall include an overall assessment of "satisfactory performance" or "unsatisfactory performance." An employee who submits a written response to an evaluation under the provisions of paragraph C.(5) preserves the right to object to said evaluation in any disciplinary proceeding initiated by the District which is based in whole or in part on the evaluation.

This court concluded in *Aplington Community School District v. Iowa PERB*, 392 N.W.2d 495, 500 (Iowa 1986), that both procedural mechanisms and substantive criteria are encompassed within the term "evaluation procedures" in section 20.9. A similar conclusion was reached in *Northeast Community School District v. PERB*, 408 N.W.2d 46, 49 (Iowa 1987). In deciding the present case, the district court concluded that the inclusion of substantive evaluation criteria as a mandatory bargaining topic has now been curtailed by legislation enacted subsequent to *Aplington* and *Northeast Community*.

At the time *Aplington* and *Northeast Community* were decided, Iowa Code section 279.14 provided:

The board shall establish evaluation criteria and shall implement evaluation procedures. If an exclusive bargaining representative has been certified, the board shall negotiate in good faith with respect to evaluation procedures pursuant to chapter 20.

A 1998 legislative amendment retained the language, quoted above, as section 279.14(1) and added a new section (2), which reads as follows:

2. The determination of standards of performance expected of school district personnel shall be reserved as an exclusive management right of the school board and shall not be subject to mandatory negotiations under chapter 20. Notwithstanding chapter 20, objections to the procedures, use, or content of an evaluation in a teacher termination proceeding brought before the school board in a hearing held in accordance with section 279.16 or 279.27 shall not be subject to the grievance procedures negotiated in accordance with chapter 20. A school district shall not be obligated to process any evaluation grievance after service of a notice and recommendation to terminate an individual's continuing teacher contract in accordance with chapter 279.

1998 Iowa Acts ch. 1215, § 41; ch. 1216, § 24.

PERB and the employee labor organizations argue that the district court erred in concluding that the 1998 legislation served to eliminate substantive evaluation criteria from the lists of topics subject to mandatory bargaining. They base this contention on two assertions. First, they argue that, if the legislature had intended to alter this court's interpretation of section 20.9 relative to "evaluation procedures" and "evaluation criteria," it would have done so by an amendment to section 20.9 rather than by placing an amendment inconsistent with

the court's interpretation of that statute elsewhere in the Code. Second, they urge that because the first numbered paragraph of section 279.14 refers to "evaluation criteria," as did this court in the *Aplington* case, the words "standards of performance" as used in the second numbered paragraph of section 279.14 must refer to something entirely different from "evaluation criteria."

A statute must be construed in its entirety. *Id.* When more than one statute is pertinent to the inquiry, the court considers the statutes together in an attempt to harmonize them. *State v. Dann,* 591 N.W.2d 635, 638 (Iowa 1999). The court seeks a reasonable interpretation that best effects the statute's purpose. *State v. Iowa Dist. Ct.,* 572 N.W.2d 587, 588 (Iowa 1997).

The arguments presented fail to persuade us that the district court was wrong in its interpretation of section 279.14(2). It was the district court's job and now is our job to ascertain what the words "[t]he determination of standards of performance expected of school district personnel shall be reserved as an exclusive management right of the school board and shall not be subject to mandatory negotiations under chapter 20" mean. If they mean what the district court found that they mean it matters not where they are located in the Code or that they express the intended result in words differing from those used elsewhere to describe the same subject matter.

The school district argues persuasively that the exclusive right to determine standards of performance granted it by section 279.14(2) necessarily includes the right to exact compliance with those standards by school district employees. To do that, the school district argues, it must be free to control the evaluation criteria used to evaluate performance. We agree. The scope of a disputed proposal is to be determined by examining what the proposal would bind the employer to do if adopted by the arbitrator. *Decatur County,* 564 N.W.2d at 397. If bargaining were compelled as to evaluation criteria, this could result in the adoption through the impasse process of evaluation criteria inadequate to enforce the standards that a school district has adopted. It would be manifestly incongruous for the legislature to grant school districts the exclusive right to set standards of performance and not also expect that they could choose the evaluation criteria by which those standards are tested. For this reason, we conclude that the district court was correct in determining that this topic was not a subject of mandatory bargaining.

PERB and the employee organizations argue that, apart from matters of evaluation criteria, there are purely procedural aspects to this proposal that should be the subject of mandatory bargaining. They urge that this is true with respect to the following proposals:

1. That the evaluation be based solely on a comparison between the employee's performance and that employee's written job description.

2. That the evaluation shall be pursuant to a mutually agreed evaluation instrument.

3. That specific criteria to be used in the evaluation will be given to the employee in writing.

4. That the evaluation report shall include an overall assessment of satisfactory performance or unsatisfactory performance.

5. That, if an employee submits a written response to an evaluation, that preserves the right to object to that evaluation in any disciplinary proceeding based on the evaluation.

In viewing items 1 through 4 above, we believe that only item 3 deals with a procedural aspect of the evaluation process and thus is a topic of mandatory bargaining. The other items all carry substantive implications for the evaluation process and, if contained in a collective-bargaining agreement, might adversely affect a school district's right to enforce standards of performance. With respect to item 5, it is procedural and is a valid topic of mandatory bargaining as it applies to disciplinary matters short of a proposed termination. The rights of the parties in regard to proposed termination are governed exclusively by section 279.14(2). Under that statute, the right to challenge an evaluation pursuant to the grievance procedure of a collective-bargaining agreement is foreclosed. The statute does not, however, preclude the right to challenge the grievance in the statutory proceeding before the school board. Any implementation of the proposal designated as item 5 above must be consistent with this distinction.

## IV. *The Proposal With Respect to Time and Place of Wage Payment.*

The second proposal for our consideration provides:

D. Method of Payment
   1. Pay Periods
      Employees shall be paid on or before the fifteenth (15) of each month. Employees shall receive checks at their regular building on regular school days.
      . . . .
   3. Final Pay
      An employee upon resignation or retirement shall have the option of receiving all of his earned, contracted salary less authorized deductions within thirty (30) days after termination. . . .

The district court concluded that this proposal was not a subject of mandatory bargaining because it did not fall within the definition of "wages," which this court adopted in *Fort Dodge Community School District v. PERB,* 319 N.W.2d 181 (Iowa 1982). The court interpreted that case as limiting mandatory bargaining of wages to those proposals involving "a specific sum or price paid by an employer in return for services rendered by an employee." We used that language in *Fort Dodge Community School District,* 319 N.W.2d at 183, to determine whether a particular proposal was a wage issue. We had used similar language in determining the meaning of wages in *City of Fort Dodge,* 275 N.W.2d at 396.

PERB and the two employee organizations contend that the district court erred in concluding that *Fort Dodge Community School District* and *City of Fort Dodge* have limited bargaining as to wages under section 20.9 to only those issues affecting a specified sum to be paid for services rendered. We agree. In the *Fort Dodge Community School District* case, the issue was whether early retirement benefits proposed by the employees were wages. We held that they were not. *Fort Dodge Cmty. Sch. Dist.,* 319 N.W.2d at 183. In the *City of Fort Dodge* case, the issue was whether a clothing allowance proposed by the employees constituted wages. We held that it did not. *City of Fort Dodge,* 275 N.W.2d at 397. In deciding those cases, we were called on to determine whether certain benefits constituted wages as contemplated in section 20.9. In the present case, the district court was called on to determine whether the employee organizations are entitled to bargain as to the time and place of payment of that which is clearly wages within the meaning

of section 20.9. We are convinced that bargaining as to wages may encompass all of the fundamental aspects of wage payment such as the time and place thereof. Accordingly, we reverse the decision of the district court on this issue and uphold the conclusion of PERB that this proposal was a subject of mandatory bargaining.

### V. *The Extended Workload Proposal.*

■ The next proposal for our consideration provides:

E. Extended Work Year and Extended Work Load

. . . .

2. Extended Work Load
   a. Based on a normal work day, any certificated teacher who teaches more than 300 minutes per day as part of his regular workload shall receive additional compensation. Secondary and intermediate teaching assignments will be five (5) class periods per day. Additional teaching assignments shall be voluntary and compensated at the employer's hourly proportional per diem rate.

The district court's finding that this was a subject of mandatory bargaining was founded on its conclusion that the proposal pertained to overtime pay. The school district urges and PERB and the employee organizations concede that the proposal does not pertain to overtime. As we recognized in *Iowa City Fire Fighters Association v. PERB*, 554 N.W.2d 707, 711 (Iowa 1996), a premium pay proposal does not relate to overtime if "the work to be assigned and the compensation apply to work within a single shift." For purposes of applying this precedent to the present case, we believe a teacher's regular workday is the equivalent of a shift. Consequently, we agree that the present proposal does not relate to overtime pay.

PERB and the employee organizations contend that, although not overtime pay, this extended workload proposal is a subject of mandatory bargaining under the general topic of wages. The decision in *Iowa City Fire Fighters Association* also forecloses that contention.

In *Iowa City Fire Fighters Association* the employees' representative submitted a bargaining proposal attempting to regulate the tasks that could be assigned the fire fighters during particular days and times of days. We held that these proposals could not be made the subject of mandatory bargaining because they clearly conflicted with the employer's exclusive right to control the work as recognized in Iowa Code section 20.7. *Iowa City Fire Fighters Ass'n*, 554 N.W.2d at 711. In the same negotiation process, the employees' organization in *Iowa City Fire Fighters Association* also submitted a proposal to bargain in regard to premium pay for work performed on certain days and during certain hours of the day. It argued that this was a wage proposal and did not interfere with the employer's right to control the work. We rejected that contention and found that the proposal directly and adversely affected the employer's ability to control the work. *Iowa City Fire Fighters Ass'n*, 554 N.W.2d at 711. Consequently, we concluded that the proposal could not be made a topic of mandatory bargaining. *Id.* We reach a similar conclusion as to the premium pay proposal in the present case. It would, in our view, adversely affect the employer's exclusive right to control the work to be performed. For this reason we reverse the district court's ruling as to this proposal and declare that it is not a subject of mandatory bargaining.

### VI. *Proposal for Pooling Sick Leave.*

■ The next proposal for our consideration provides:

H. Sick Leave Bank

1. Establishment

A Sick Leave Bank will be established for the use of employees who choose to participate. Use of Sick Leave Bank days will commence on the first day after accumulated Sick Leave is exhausted and will continue until the end of the year or until the employee becomes eligible for long term disability insurance. The Bank year will be the contract year.

2. Participation

Participation in the Sick Leave Bank will be on a voluntary basis and each participating individual employee's contribution will be made in the form of one (1) day of Sick Leave from his/her current year's allocation. The days contributed to the Bank become the property of the Bank and will not be returned to the employee, except under paragraph 5 below.

3. Enrollment

Enrollment will take place during opening workshop but in no case later than September 15 and will entitle the enrolling employee to membership until revoked in writing by the employee.

4. Unused Days in Bank

Assets of the Bank will accumulate, but the maximum carry over is 300 days. The following year's Bank will consist of the days carried over from the previous year in addition to all contributed days for the year's participation. The Board will provide the Association with a verification of the Bank's total number of days for the current year and of the previous year's usage of Bank days by no later than September 30 of each year.

5. Use of Leave Bank Days

Use of Sick Leave Bank days will be on a daily use basis; e.g., each eligible employee will draw each day until the total Bank Leave days have been exhausted. An eligible employee is one who has timely volunteered for participation in the Sick Leave Bank and who as a result of a long-term disability of at least 10 consecutive days, has exhausted his/her personal Sick Leave without being eligible for long term disability, worker's compensation, and/or social security disability. Use of Sick Leave Bank shall be limited to those absences where a medical doctor verifies the illness of disability.

The district court concluded the proposal was a subject of mandatory bargaining because it related to "leaves of absence." Although the school district does not challenge the conclusion that sick leave involves a leave of absence, it urges that the proposal may not be made a subject of mandatory bargaining because it is contrary to law.

Iowa Code section 279.40 refers to the receipt and use of sick leave days by Iowa public school employees. It provides in part:

Public school employees are granted leave of absence for medically related disability with full pay in the following minimum amounts: [ten days to fifteen days increasing annually during the first six years of employment].

. . . .

The above amounts . . . shall be cumulative to at least a total of ninety days. The school board shall, in each instance, require such reasonable evidence as it may desire confirming the necessity for such leave of absence.

Nothing in this section shall be construed as limiting the right of a school

board to grant more time than the days herein specified. . . .

Iowa Code § 279.40.

The school district argues that the last sentence of the second paragraph, which we have quoted above, mandates that sick leave is inextricably tied to the individual employee involved and must be based on a health-related leave of absence for that employee that has been verified by the employer. Based on that interpretation, the school district urges that an employee's sick leave is not assignable to another employee. We are not persuaded by this argument. It is significant, in our view, that section 279.40 does not fix a limit with respect to the sick leave that may be granted to an individual employee. It only prescribes a minimum amount of sick leave. Iowa Code section 279.13 provides that

> [c]ontracts with teachers ... shall be in writing and shall state [number of working days and compensation] *and any other matters as may be mutually agreed upon.*

(Emphasis added.) This statute appears to give broad discretion to school boards in contracting for employee benefits. The bargaining topic that is disputed here is clearly a topic of mandatory bargaining under the category of leaves of absence unless it is contrary to law. We are unable to conclude that the innovative method of sick leave allocation that has been proposed by the employee organization is foreclosed by law. Accordingly, we affirm the district court's conclusion that this involves a mandatory topic of bargaining.

We have considered all issues presented and conclude that the judgment of the district court must be reversed with respect to the proposal affecting time and place of wage payment and the proposal for allowing additional compensation to employees teaching more than 300 minutes per day. It is affirmed as to the proposals on employee evaluations and the pooling of sick leave.

**AFFIRMED IN PART AND REVERSED IN PART.**