IOWA STATE EDUCATION ASSOCIA-TION—IOWA HIGHER EDUCATION ASSOCIATION, Appellant,

v.

PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee,

and

State of Iowa, Intervenor.

No. 60968.

Supreme Court of Iowa.

Aug. 30, 1978.

Charles E. Gribble, of Dreher, Wilson, Adams & Jensen, Des Moines, for appellant.

Richard C. Turner, Atty. Gen. and Marie A. Condon, Asst. Atty. Gen., for appellee.

Gene A. Vernon, Des Moines, for intervenor.

HARRIS, Justice.

The public employment relations act gives employees of regents' institutions, along with other state employees, the privilege of collective bargaining. Petitioner, a teachers' union representing employees at Iowa regents' institutions, contends that regents' institution employees may bargain directly with the board of regents. The trial court, affirming the public employee relations board (PERB), determined, however, that these employees must bargain with the State of Iowa and not the regents. We affirm.

The privilege of collective bargaining is granted to state employees by chapter 20, The Code. The privilege is of rather recent origin. The chapter became effective July 1, 1974, but bargaining was not permitted until June 1, 1976. Prior to the effective date of chapter 20, rights of public employees to collectively bargain were sharply limited. *State Board of Regents v. United Packing House, etc.*, 175 N.W.2d 110, 113 (Iowa 1970).

In enacting chapter 20 the legislature defined the term public employer: "Public employer means the state of Iowa, its boards, commissions, agencies, departments, and its political subdivisions including school districts and other special purpose districts." § 20.3(1), The Code.

The union presented its contention by appropriate motion to the PERB. The PERB rejected the union's contention and ruled: "That the State of Iowa is the public employer of all state employees for purposes of collective bargaining under the act . . . . ."

The sole issue in this appeal is whether the union is required to bargain with the State or may instead bargain with the board of regents.

I. We explained the scope of our review of administrative agency interpretations of statutes in *West Des Moines Ed. Ass'n v. Public Employment*, 266 N.W.2d 118, 124–125 (Iowa 1978). The agency's interpretation is entitled to some weight but is not binding. In the same opinion we repeated the well settled rules we rely upon for statutory interpretation: "This court must determine the intent of the legislature. Our construction of this statute must be sensibly and fairly made with a view of carrying out this intent. (Authority)." 266 N.W.2d at 125.

II. In order to search out legislative intent the PERB heard testimony of three members of the general assembly who had been active in the enactment of the statute. These witnesses, on the basis of their legislative experience, offered opinions on the subject of legislative intent.

On a number of occasions we have seen records where legislators gave similar testimony. At first blush it might seem reasonable to rely upon an individual legislator's opinion of legislative intent. But we believe such testimony is generally unpersuasive.

The legislative process is a complex one. A statute is often, perhaps generally, a consensus expression of conflicting private views. Those views are often subjective. A legislator can testify with authority only as to his own understanding of the words in question. What impelled another legislator to vote for the wording is apt to be unfathomable.

■ Accordingly we are usually unwilling to rely upon the interpretations of individual legislators for statutory meaning. This unwillingness exists even where, as here, the legislators who testify are knowledgeable and entitled to our respect. See generally 2A Sutherland Statutory Construction, § 48.16, p. 222 (Fourth Ed. 1973).

We have long applied the rule that "[i]n construing statutes the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said." Rule 14(f)(13), Rules of Appellate Procedure.

We pass the testimony of the legislators and turn to the more traditional tools of statutory construction.

III. In *State Board of Regents v. United Packing House, etc.*, supra, we held that the regents possess the power to negotiate contracts with the employees of their institutions. We also held however that they could not proceed with bargaining because at that time Iowa had no collective bargaining law for public employees. The union argues that with the enactment of chapter 20 the only obstacle is removed and it can now proceed to bargain with the regents.

The union's argument is strong but not conclusive. It does not address the possibility that the legislature, aware of our holding in *State Board of Regents*, wished to shift the bargaining authority from the regents to the State. In view of the legislative history of § 20.3(1), we conclude the legislature did so intend.

A definition of public employer, consistent with the union's suggested definition, was in fact proposed to the legislature. The proposed legislation defined public employer as: ". . . [T]he state of Iowa and independently, the department of social services, highway commission, and board of regents and, collectively, for all other boards, commissions, agencies and departments. 'Public employer' also means the political subdivisions of this state including school districts and other special purpose districts." S.F. 387, 64th G.A., 1st Session, filed March 11, 1971.

This proposal died when the Iowa Senate referred the bill in which it was included back to the state government committee at the conclusion of the 64th General Assembly (1972).

Before the state government committee again introduced the public employment relations act in the 65th G.A. (1973) the definition was extensively altered. This definition, which was characterized as a "new section," contained the words which now appear in § 20.3(1). The special reference to the board of regents was conspicuously absent from the statute as adopted.

■ We have to assume this absence was deliberate. The wording change between the proposed statute and the adopted statute indicates the legislature wished to vest the State and not the board of regents with the responsibility to bargain with the union. ". . . The striking of a provision before enactment of a statute is an indication the statute should not be construed to include it. . . ." *Chelsea Threatre Corp. v. City of Burlington*, 258 N.W.2d 372, 374 (Iowa 1977) and authority.

The PERB was right in so ruling and the trial court was right in so holding.

AFFIRMED.

All Justices concur, except ALLBEE and McGIVERIN, JJ., who take no part.