SAYDEL EDUCATION ASSOCIATION,
Appellant,

v.

PUBLIC EMPLOYMENT RELATIONS
BOARD, Appellee,

and

Saydel Consolidated School District and
Iowa Association of School Boards,
Intervenors-Appellees.

No. 68099.

Supreme Court of Iowa.

April 20, 1983.
Rehearing Denied May 12, 1983.

Charles E. Gribble and Becky S. Knutson, of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Julie R. Pottorff, Asst. Atty. Gen., for appellee.

Edgar H. Bittle and Elizabeth Gregg Kennedy, of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for intervenor-appellee Saydel Consolidated School Dist.

John R. Phillips and Russell L. Samson, of Rogers, Phillips & Swanger, Des Moines, for intervenor-appellee Iowa Ass'n of School Boards.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

This case concerns a school district's proposal that certain criteria, other than seniority, be considered by it in connection with transfer or staff reductions. The issue is whether the proposal falls within the mandatory subjects of bargaining under our Public Employment Relations Act, Iowa Code chapter 20. Under the district's proposal, skill, ability and experience, as well as seniority, must be considered in deciding which employees would be retained. In its administrative hearing on the issue, the Public Employment Relations Board (PERB) held the proposal was a mandatory subject of bargaining, and the district court agreed. We affirm.

The Saydel Education Association (association) is a certified employee organization under Iowa Code section 20.3(4), and the Saydel Consolidated School District (district) is a public employer under section 20.3(1). During the parties' negotiation for a collective bargaining agreement for the 1981–82 school year, a disagreement arose concerning the district's proposed means to effect transfers and staff reductions. The district proposed that its decision on whether to allow a voluntary transfer of a teacher, or to retain a teacher, in the face of required staff reduction, should be made on the basis of the teacher's seniority, experi-ence, education, "relative skill and ability" (as determined by the teacher's evaluation), and other criteria. Under its proposal, seniority would be the deciding factor only if other considerations were relatively equal.

The association, on the other hand, maintained the employer must make those decisions based solely on seniority, unless the makeup of the resulting staff would no longer comply with minimum state standards.

Iowa Code section 20.9 establishes the perimeter of mandatory bargaining, providing in part that

[t]he public employer and the employee organization shall meet at reasonable times, including meetings reasonably in advance of the public employer's budget-making process, to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, *seniority, transfer procedures,* job classifications, health and safety matters, evaluation procedures, *procedures for staff reduction,* in-service training and other matters mutually agreed upon.

(Emphasis added.)

Whether a proposal falls within the category of mandatory bargaining has significant impact because it determines whether impasse and arbitration procedures are available to settle a disagreement. *City of Fort Dodge v. Iowa Public Employment Relation Board,* 275 N.W.2d 393, 395 (Iowa 1979). If a proposal falls outside the classification of mandatory bargaining subjects, and is not one which is prohibited, it falls within a very broad classification, the "permissive" subjects of negotiation. It is in this classification, the association argues, that the other criteria must be placed. The association may elect to bargain on those issues, it claims, but it cannot be forced to do so under section 20.9.

In *City of Fort Dodge v. PERB,* the first case addressing the scope of section 20.9, we observed that "[c]onflicting views on the general philosophies of strict or broad appli-

cations of the scope of negotiations have divided legal scholars and promise to furnish a fruitful area for future contention before the PERB and in the courts." 275 N.W.2d at 394. This statement has proven to be prophetic. The extent of this court's involvement in the interpretation of section 20.9, and the lack of unanimity on its scope, are obvious from a reading of the cases decided after *City of Fort Dodge. See, e.g., Fort Dodge Community School District v. Public Employment Relations Board,* 319 N.W.2d 181, 183–84 (Iowa 1982) (7–2; cash incentive for early retirement not mandatory subject of bargaining as "wages" or "supplemental pay"); *Woodbine Community School v. Public Employment Relations Board,* 316 N.W.2d 862, 864–65 (Iowa 1982) (5–0; proposal fixing the number of credit hours to be earned by teachers was mandatory subject of bargaining, but portion seeking to establish kind of credit to be earned was not); *City of Mason City v. Public Employment Relations Board,* 316 N.W.2d 851, 854 (Iowa 1982) (6–3; proposal that when police officers became eligible for medicare, employer would provide supplemental policy to medicare and pay premiums, pertained to "retirement systems," and thus, was not a mandatory subject of bargaining); *Charles City Education Association v. Public Employment Relations Board,* 291 N.W.2d 663, 668 (Iowa 1980) (5–2–2; proposal relating to nature of educational hours necessary for teachers to advance along salary schedule was not within term "wages," and thus, not a mandatory subject of bargaining); *Charles City Community School District v. Public Employment Relations Board,* 275 N.W.2d 766, 775 (Iowa 1979) (6–3; proposal that medical and health insurance coverage be provided was mandatory subject, but proposal that grievance committee members be allowed to investigate during working hours without loss of wages was not). *See also,* Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act,* 63 Iowa L.Rev. 649, 673 (1978).

The legacy of these cases has been a restrictive view of the scope of mandatory bargaining under our act. In *City of Fort Dodge,* and cases following it, we have discussed the rationale for that view, and we need not repeat it here. Suffice it to say that the language of section 20.9, its legislative history, and its juxtaposition with broad employer rights under 20.7 have brought us to that view.

The association, in seeking a restrictive interpretation of section 20.9, plies waters quite unfamiliar to employees' organizations, which have consistently sought a broad scope of negotiations. And, while employers usually favor a restrictive reading of section 20.9, this employer argues it should not be read *that* restrictively.

The gist of the association's argument is that the laundry list of section 20.9 mandates negotiation on three relevant subjects: "[S]eniority, transfer *procedures,* [and] . . . *procedures* for staff reduction." (Emphasis added.) Seniority is specifically mentioned in the list of mandatory subjects, but considerations such as skill and experience are not. According to the association's argument, these additional criteria are substantive in nature and cannot be implied in the term "procedures" in view of our rule that section 20.9 must be narrowly construed.

As the district court noted, however, the association's argument that "procedure" must be defined as merely "a particular way of accomplishing something or of acting . . . a series of steps followed in a regular definite order," is undermined by its own argument that seniority, itself a substantive criterion, should be a mandatory subject of bargaining under transfer or staff-reduction "procedures." We note also, that the PER Act itself contemplates a broader view of the term "procedure." Section 20.19, for example, provides that, if the bargaining parties are at an impasse and are unable to agree on the means of resolving it, "the impasse *procedures* provided in sections 20.20 to 20.22 shall apply." (Emphasis added.) The impasse "procedure" referred to clearly contemplates reference to substantive criteria. *See* § 20.-22(9) (arbitrators "shall consider, in addition to any other relevant factors," the past

collective bargaining contracts between the parties, comparable terms for other public employees, the interests of the public, and the power of the employer to levy taxes). These substantive considerations fall under what the legislature has labeled impasse "procedures." In view of its broad application of that term under the impasse provisions of PERB, we do not believe the legislature intended to give it the restricted construction urged by the association.

The district argues that, if a school district were required to consider only seniority, and not experience, ability or other factors, this would impinge on the broad rights reserved to a public employer under section 20.7:

Public employer rights. Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to:

. . . .

2. Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.

. . . .

4. Maintain the efficiency of governmental operations.

5. Relieve public employees from duties because of lack of work or for other legitimate reasons.

6. Determine and implement methods, means, assignments and personnel by which the public employer's operations are to be conducted.

7. Take such actions as may be necessary to carry out the mission of the public employer.

According to the district, its right to make staff adjustments through attrition or transfers is an inherent part of this authority. Failure to require negotiations on criteria other than seniority would adversely affect the operation of the school, according to the district, by requiring retention of senior, but less qualified, teachers and might, in some cases, eliminate the only teacher certified in certain areas.

The association counters that unqualified teachers may be removed through termination proceedings under chapter 279 and, in any event, such considerations bear on the merits of a proposal, a matter beyond our concern in statutory construction. *See Charles City Community School District,* 275 N.W.2d at 769 ("We look only at the subject matter and not the merits of proposals at issue.")

We do examine the consequences of a particular statutory construction, however, in attempting to discern legislative intent. Iowa Code § 4.6(5). We do not believe the legislature intended to place the severe limitations on a public employer's right to maintain staff quality which would follow the association's construction of section 20.9.

The association argues that if "seniority" is one of the criteria already encompassed in the terms transfer or staff-reduction "procedure," then it has no independent reason for existence, and the rule is that a statute "should be construed so that effect is given to all its provisions and no part will be inoperative or superfluous, void or insignificant." *City of Fort Dodge,* 275 N.W.2d at 397. "Seniority," however, does have meaning apart from transfer or staff-reduction procedures. Disagreements might well arise, as the district argues, as to when seniority begins and whether it will be determined on a building-wide, departmental or classification basis.

In addition, we must give weight to an administrative interpretation of a statute. Iowa Code § 4.6(6). PERB has read section 20.9 to require negotiations on a broad range of teacher qualifications bearing on transfer or reduction decisions. We agree with that view.

The district court overruled the association's motion to strike certain facts alleged in its petition for declaratory ruling before PERB. The association contends these facts went solely to the issue of whether the proposals in issue were fair and

reasonable and not to the issue of whether they were mandatory subjects of bargaining. It complains that the district court relied on those facts in reaching its decision on judicial review. While the district court preceded its legal conclusion with a recitation of some of the facts of the case, it does not appear it relied on them in reaching its conclusion. The issue before it, and this court, is purely one of law; it is difficult to perceive how inclusion of "improper" facts in the PERB petition could have had any effect upon it. We find no merit in this contention.

AFFIRMED.

All Justices concur except McCORMICK and HARRIS, JJ., who concur specially.

McCORMICK, Justice (concurring specially).

I am unable to agree with the court's approach but concur in the result. My problem with the court's approach is its suggestion that transfer or reduction procedures based only on seniority would violate legislative intent. I find nothing in the statute to support that suggestion. It ignores the elaborate delineation of school board and teacher rights in chapter 279, and it violates the precept that the merits of a proposal are not relevant in interpreting the statute.

PERB's interpretation should be upheld in this case on a different ground. If criteria for identifying persons to be transferred or terminated were not embraced in the terms "transfer procedures" and "procedures for staff reduction," the parties would have no reason to bargain about the means of implementing transfers or staff reduction. It is essential to determine who is to be transferred or terminated before transfer or termination can occur. The association recognizes this in reaching outside these terms to the word "seniority" which is a separate mandatory bargaining topic. If a separate topic is somehow relevant, however, no reason exists to stop with seniority. Other listed topics such as wages, job classifications and health and safety matters would seem equally relevant. The fact is

that the scope of each bargaining topic must depend on its own meaning.

I would hold that "transfer procedures" and "procedures for staff reductions" independently and necessarily include the duty to bargain over criteria to be used in determining who is to be transferred or terminated.

HARRIS, J., joins this special concurrence.