CLINTON POLICE DEPARTMENT
BARGAINING UNIT, Appellant,

v.

IOWA PUBLIC EMPLOYMENT
RELATIONS BOARD, Appellee,

and

City of Clinton, Iowa,
Intervenor-Appellee.

No. 85–1850.

Supreme Court of Iowa.

Dec. 17, 1986.

G. Wylie Pillers, III of Pillers, Pillers &
Pillers, P.C., Clinton, for appellant.

M. Sue Warner and James H. Gilliam,
Des Moines, for appellee.

Bruce D. Johansen, City Atty., Clinton,
for intervenor-appellee.

Considered by HARRIS, P.J., and
McGIVERIN, LARSON, CARTER, and
WOLLE, JJ.

WOLLE, Justice.

Here the question is whether a union's
collective bargaining proposal constituted a
mandatory or a permissive subject of bar-
gaining within the meaning of sections 20.7
and 20.9 of the Iowa Public Employment
Relations Act, Iowa Code chapter 20 (1985).
The Public Employment Relations Board
(PER Board) decided the proposal was a
permissive, not a mandatory, subject of
bargaining and the district court on judicial
review agreed. We affirm.

In the fall of 1984 the petitioner Clinton
Police Department Bargaining Unit (union)
and the intervenor City of Clinton (city)
commenced negotiations looking toward a
collective bargaining agreement to cover
the 1985–86 fiscal year. Both at the outset
of negotiations and thereafter when the
parties reached an impasse and invoked
statutory impasse procedures delineated in
Iowa Code section 20.21, the union pro-
posed the contract provision here at issue:

WORKING ENVIRONMENT AND
SAFETY

The Employer acknowledges and recog-
nizes its responsibility to strive to pro-
mote and to provide for the safety of
police department personnel, particularly
while in the line of duty. This duty
includes, but is not limited to, review of

existing department manpower; street patrol personnel, particularly during peak activity hours; development of guidelines for backup assistance in emergency situations, and regular evaluation of equipment, weapons and their maintenance. The employer shall, in carrying out the above, consider, compare and analyze such available data, reports and professional studies as may be available, analyze the gravity of the offenses and violent propensities of the offenders within the community; and, such other data and statistical information available from around the country, such as FBI, U.S. Justice Department, Iowa Department of Public Safety, but not limited to the same.

The city maintained that the proposal was not a mandatory subject of bargaining. To resolve the question, the fact-finder petitioned the PER Board for a declaratory ruling on whether the proposed contract provision was mandatory or permissive only. The parties presented briefs but no evidence on the issue, and the PER Board ruled that the proposal was permissive. The union then sought judicial review of that declaratory ruling pursuant to Iowa Code section 17A.19, and the union also requested permission to present evidence on the matter to the district court. The district court denied the union's request to present evidence and then affirmed the PER Board ruling that the "Working Environment and Safety" proposal was a permissive but not a mandatory subject of bargaining.

We first address the question whether the union had the right to present additional evidence, then the question whether the PER Board properly characterized the proposal as permissive. Our review of the district court's judicial review decision is at law, not de novo; we give weight to the agency's construction of the statute but are not bound by it. *Aplington Community School District v. Iowa Public Employment Relations Board,* 392 N.W.2d 495, 498 (Iowa 1986); *Charles City Education Association v. Public Employment*

*Relations Board,* 291 N.W.2d 663, 666 (Iowa 1980); Iowa Code § 4.6(6).

## I. *The Union's Offer of Evidence.*

█ The union assigns as error the district court's refusal to receive and consider evidence offered on the question whether its proposal constituted a mandatory subject of collective bargaining. The evidence proffered by the union consisted generally of statistics concerning law enforcement officers assaulted or killed while on duty, the relationship between such assaults and manpower staffing, and the availability of equipment and techniques for reducing the risks of such harm to officers. The district court rejected the offer on the ground that this judicial review proceeding presented only an issue of law, not an issue of fact. We agree.

The underlying administrative proceeding we here review is not the evidentiary hearing before the fact-finder but the proceeding leading to a declaratory ruling of the PER Board. We are not called upon to decide whether this particular contract proposal is fair or economically feasible; those factual determinations are left to the parties or subsequently to an arbitrator if the proposal constitutes a mandatory subject of bargaining and the parties reach no agreement. *Charles City Community School District v. Public Employment Relations Board,* 275 N.W.2d 766, 769 (Iowa 1979); Iowa Code §§ 20.21–.22. Separate and distinct from that fact-bound determination—whether a mandatory proposal has substantive merit—is the preliminary question for the PER Board, an issue "purely one of law", as to whether the union's proposal on its face is a mandatory subject of bargaining. *Saydel Education Association v. Public Employment Relations Board,* 333 N.W.2d 486, 490 (Iowa 1983).

Iowa Code section 17A.9 authorizes the PER Board to "provide by rule for ... declaratory rulings...." The PER Board has implemented that statutory authority, through rule, by providing an expedited declaratory ruling mechanism for resolving negotiability issues. 660 Iowa Admin.Code 6.3(2), 10.1–.6 (1985). We have held this

agency declaratory ruling procedure is an adequate administrative remedy that must be exhausted before resort to the courts. *City of Des Moines v. Des Moines Police Bargaining Unit Association*, 360 N.W.2d 729, 732 (Iowa 1985); *Public Employment Relations Board v. Stohr*, 279 N.W.2d 286, 289 (Iowa 1979).

Neither the union nor the city presented evidence to the PER Board before it issued its declaratory ruling in this case, and the final agency decision which we here review presented only a legal question of statutory construction. *Saydel*, 333 N.W.2d at 489–90; *Charles City Education Association*, 291 N.W.2d at 666; Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act*, 63 Iowa L.Rev. 649, 675 (1978). The district court did not err in refusing to consider evidence offered by the union in this judicial review proceeding.

II. *The Mandatory or Permissive Character of the Union's Proposal.*

■ Well-established general principles govern our determination whether a specific collective bargaining proposal is mandatory or permissive. Mandatory topics are restricted to those specifically delineated in Iowa Code section 20.9, which provides:

The public employer and the employee organization shall meet at reasonable times, including meetings reasonably in advance of the public employer's budget-making process, to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, *health and safety matters*, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon. . . .

(Emphasis added.) We have narrowly and restrictively construed this statutory list of mandatory subjects of bargaining. *See Charles City Education Association*, 291 N.W.2d at 667; *City of Fort Dodge v. Public Employment Relations Board*, 275 N.W.2d 393, 398 (Iowa 1979). Our restric-

tive reading of section 20.9 is consistent with the broad rights reserved to public employers in Iowa Code section 20.7, which in pertinent part provides:

Public employers shall have . . . the exclusive power, duty, and the right to:

1. Direct the work of its public employees.

2. Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.

. . . .

4. Maintain the efficiency of governmental operations.

. . . .

6. Determine and implement methods, means, assignments and personnel by which the public employer's operations are to be conducted.

. . . .

The union contends that its proposed "Working Environment and Safety" contract provision falls within the "health and safety matters" language of Iowa Code section 20.9. It urges that the proposal, even when read literally, is very modest in scope and would require that the employer merely review existing manpower needs in the light of national and state standards designed to promote and preserve the health and safety of law enforcement officers. The city, in response, argues that the proposal at its core infringes upon the reserved rights of the employer to assign personnel to specific tasks, determine manning requirements, and maintain efficient and economic governmental operations.

We must take the proposal at its face value. It is not for the PER Board or a court on judicial review to rewrite the parties' contract proposals. This union proposal, if written into the parties' collective bargaining agreement, would impose on the city the duty to review the number of officers on the force and the assignment of those officers to certain tasks. The city would be required to develop "guidelines for backup assistance in emergency situations." The proposal clearly would impinge on the management rights which sec-

tion 20.7 reserves to the city as a public employer.

The PER Board has consistently found contract proposals similar to the union's proposal here to be permissive in character even though they also reflected health and safety concerns. *See City of Ottumwa,* 81 PERB 1891 (1981); *City of Newton,* 78 PERB 1322 (1978); *City of Dubuque,* 77 PERB 964 (1977). In *City of Dubuque,* where the disputed union proposal called for two-man patrol cars or, alternatively, a minimum of eleven one-man cars for patrol operations, the PER Board provided the following thoughtful and persuasive analysis:

> There is no question that the proposal before us relates directly to the establishment of manpower needs and the deployment of personnel by the City, matters which are indeed considered managerial prerogatives not normally subject to mandatory bargaining. At the same time, it cannot be disputed that, in the broadest sense of the term, the "safety" of any individual policeman could in some manner be enhanced by an increase in the total number of personnel.
>
> The issue, then, is whether the predominant characteristic of the proposal is one of safety, and thus a mandatory subject, or manpower, and thus permissive. It is our opinion that the subject is predominantly one of manpower. Simply stated, we perceive a staffing policy such as the one before us as having only a speculative and uncertain impact on safety in most instances. Accordingly, although the general subject of safety as a means of protecting employees beyond the normal hazards inherent in their work is a mandatory subject of bargaining, and although the manpower requirements of a particular operating circumstance might

fall within that category, it is our judgment that staffing, in and of itself, is not sufficiently related to safety so as to include it as a mandatory subject. Rather, it is predominately an element of managerial determination and governmental policy bearing on the extent and quality of service to the public.

*Id.* at 3–4.

The PER Board quoted those two paragraphs in its written decision in this case, then held that the union's bargaining proposal here was permissive even though having "safety ramifications" because "the proposal specifically relates to the level and deployment of manpower...." The district court on judicial review upheld that ruling, concluding that the union proposal "impermissibly intrudes upon the policy-making decisions of the employer, especially those set out in section 20.7(6)." The district court further explained:

> While the health and safety of the patrol officers should be a very real concern of the employer, it does not necessarily follow that the proposal by the union is the method that should be used by the employer to arrive at the decisions concerning such matters.

The PER Board and the district court have both correctly construed Iowa code sections 20.7 and 20.9 as they apply to the union's proposal here in question. Their reading of the statute and this proposal mirrors our own.

AFFIRMED.