**STATE of Iowa, Appellant,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee,**

and

**AFSCME/IOWA Council 61, Appellee.**

**AFSCME/IOWA COUNCIL 61, Cross–Appellant,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Cross–Appellee,**

and

**State of Iowa, Cross–Appellee.**

**No. 92–1051.**

Supreme Court of Iowa.

Nov. 24, 1993.

Kristin H. Johnson, Iowa Dept. of Personnel, Des Moines, for appellant.

Susan M. Bolte, Public Employment Relations Bd., Des Moines, for appellee bd.

Michael E. Hansen, Des Moines, for appellee AFSCME.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

In this administrative appeal, we are called upon by the State of Iowa, appellant, the Public Employment Relations Board (PERB), appellee, and the American Federation of State, County and Municipal Employees, Council 61 (AFSCME), intervenor-appel-

lee, to review five collective bargaining proposals and determine whether they are mandatory or permissive subjects of bargaining under Iowa Code chapter 20 (1991). The PERB issued rulings on the negotiability of seventeen contract proposals upon the petitions of the State of Iowa and AFSCME. The Polk County district court reviewed PERB's rulings on eleven of these proposals. On appeal, we review the district court's rulings on five of these proposals.

During negotiations on a two-year collective bargaining agreement, an array of disputes arose over the negotiability of seventeen contract proposals placed on the bargaining table by AFSCME. The State of Iowa (State) seeks review of the district court's rulings on three of the disputed contract proposals—proposal numbers 7, 9, and 16. AFSCME seeks review, on cross-appeal, of proposal numbers 2 and 10. All of the proposals at issue deal with either the composition and operation of proposed labor/management committees or the subject matter of committee meetings.

The district court agreed with the PERB that proposals 2 and 10 were permissive subjects and proposals 7 and 9 were mandatory bargaining subjects. Proposal 16 was ruled a permissive subject by the PERB and mandatory by the district court. On appeal, we affirm in part and reverse in part.

## I. Scope of Review.

Our review is governed by the provisions of Iowa Code section 17A.19 (1991). The issue before us is one of law. Although we give weight to the interpretation of the PERB, we are not bound thereby and make an independent determination of the meaning of the statutes. *Iowa State Educ. Ass'n v. PERB*, 269 N.W.2d 446, 447 (Iowa 1978); *West Des Moines Educ. Ass'n v. PERB*, 266 N.W.2d 118, 124–25 (Iowa 1978).

## II. Nature of Proposals.

Proposal 2 concerns the establishment and operation of labor/management training committees at the Department of Corrections. The proposed committee would meet to discuss and formulate recommendations "relating to training as it regards health and safety."[1] The disputed portion of proposal 7 concerns leaves of absence for union representatives to attend labor/management meetings to discuss issues dealing with mandatory subjects of bargaining.[2] Proposal 9 would require the employer and the union to discuss at labor/management meetings "disputes over the number of employees within each classification and work unit that may be on vacation at any given time."[3] Proposal 10 concerns leaves of absence for the local union president to attend labor/management committee meetings.[4] Finally, proposal 16 calls

1. Proposal 2 reads in full:
 Appendix H Department of Corrections
 4. Article XII, Training Committee.
 The Union and the Employer agree to establish committees at adult corrections institutions in the Department of Corrections for the purpose of discussing and formulating recommendations relating to training as it regards health and safety. Such committees shall be comprised of three (3) members to be designated by the Employer and three (3) employees to be designated by the Union.
 Such committees shall meet on a quarterly basis following labor-management meetings, when possible, and written recommendations shall be submitted to the warden or superintendent of the institution on a quarterly basis. Copies of the recommendations shall be forwarded to the Director of the Department of Corrections.
 Employees shall be in pay status when the above referenced meetings are held during the employee's regularly scheduled hours of employment. The Employer is not responsible for

any travel expense or other expenses incurred by employees for the purpose of complying with the provision [sic] of this Section.

2. The disputed portion of Proposal 7 reads:
 Article X Leaves of Absences, Section 4
 F. The Employer shall allow a paid leave of absence for a reasonable number, as set forth below, of Union representatives to attend labor/management meetings to discuss issues dealing with mandatory subjects of bargaining.

3. The disputed portion of proposal 9 reads, "[t]he Employer and the Union shall discuss at labor/management meetings disputes over the number of employees within each classification and work unit that may be on vacation at any given time."

4. Proposal 10 reads in full:
 Article X Leaves of Absence, Section 4
 E. Delegates to Joint Labor/Management Committees

for the establishment and operation of two labor/management committees for the purpose of studying and making recommendations regarding "the wage pay grades of job classifications within the bargaining units."[5]

III. *Discussion of Law.*

Chapter 20 of the Iowa Code provides the statutory framework governing the rights of public employees to organize and collectively bargain as well as the rights of public employers with respect to the collective bargaining process. Specifically, section 20.7 outlines the rights of public employers in the collective bargaining process. Iowa Code § 20.7. Section 20.9 governs the scope of negotiable issues under the act. Iowa Code § 20.9.

In section 20.9, the legislature created two categories of negotiable subjects: mandatory subjects (the parties "shall" negotiate as to certain items) and permissive subjects (parties shall negotiate as to other items "mutually agreed upon"). *See* Iowa Code § 20.9; *City of Fort Dodge v. PERB*, 275 N.W.2d 393, 395 (Iowa 1979). In *City of Fort Dodge,* this court noted that the "classification of a particular item is important, because only mandatory items may be taken through statutory impasse procedures to final arbitration, unless the employer consents." *City of Fort Dodge,* 275 N.W.2d at 395.

Section 20.9 sets forth a "laundry list" of mandatory subjects of negotiation. Iowa Code § 20.9. Section 20.9 reads in part:

The public employer and the employee organization shall meet at reasonable times . . . to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon. Negotiations shall also include . . . grievance procedures for resolving any questions arising under the agreement, which shall be embodied in a written agreement and signed by the parties.

. . . .

Nothing in this section shall diminish the authority and power of the department of personnel . . . to recruit employees, prepare, conduct and grade examinations, rate candidates in order of their relative scores for certification for appointment or promotion or for other matters of classification, reclassification or appeal rights in the classified service of the public employer served.

Section 20.7, in contrast, grants certain "powers, duties, and rights" exclusively to public employers. Iowa Code § 20.7. It reads:

Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to:

1. Direct the work of its public employees.

2. Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.

---

The Local Union President/Chapter Chair or his/her designee shall be granted time off, with pay, to attend regular meetings or conferences of joint Labor/Management committees such as LEECALM and QCALM. Such leaves shall not exceed eight (8) hours per month.

5. The disputed portion of Proposal 16 states:
III. *Merit System and Job Classification*
Article IX Wages and Fringe Benefits, Section 1
 E. Two committees, one composed of four Union representatives of Regents employees appointed by the President of AFSCME/Iowa Council 61 and four representatives of the Employer appointed by the Director of the Iowa Department of Personnel, and the other committee composed of six Union representatives of General Government employees appointed by the President of AFSCME/Iowa Council 61 and six representatives of the Employer appointed by the Director of the Iowa Department of Personnel shall be formed to study and make recommendations regarding the wage pay grades of job classifications within the bargaining units.
The committees shall study classifications submitted by any committee member and shall evaluate the skills, effort, working conditions, education required and other relevant information regarding the job.

3. Suspend or discharge public employees for proper cause.

4. Maintain the efficiency of governmental operations.

5. Relieve public employees from duties because of lack of work or for other legitimate reasons.

6. Determine and implement methods, means, assignments and personnel by which the public employer's operations are to be conducted.

7. Take such actions as may be necessary to carry out the mission of the public employer.

8. Initiate, prepare, certify and administer its budget.

9. Exercise all powers and duties granted to the public employer by law.

In analyzing questions of whether bargaining proposals must be negotiated, this court faces the task of delineating the scope of section 20.9 and section 20.7.

In *Charles City Community School District v. Public Employment Relations Board,* this court discussed the "ideological differences between those who advocate a carefully limited scope of negotiations and those who advocate a broad scope of negotiations" under the Public Employment Relations Act (PERA). *Charles City Community Sch. Dist. v. PERB,* 275 N.W.2d 766, 769–73 (Iowa 1979); *see also* Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act,* 63 Iowa L.Rev. 649 (1978). We concluded "from the legislative history of § 20.9 and the cogent policy arguments for distinguishing public and private sector bargaining that the Iowa legislative intent was to adopt a restrictive approach to interpreting the subjects listed in § 20.9." *Charles City Community Sch. Dist.,* 275 N.W.2d at 773.

From that premise, the court in *Charles City Community School District,* adopted a two-step analysis for analyzing negotiability disputes. *Id.* First, the proposal must "come within" the meaning of a section 20.9 subject. Second, the subject matter of the proposal must not be illegal under any other provisions of Iowa law. *Id.*

In defining the various section 20.9 bargaining subjects, we involve ourselves in an exercise of statutory construction. *City of Fort Dodge,* 275 N.W.2d at 396.

In attempting to determine the meaning to be given a word used in a statute, we must "examine the statutes and, unless a contrary intention is evident, give the words used their ordinary and commonly-understood meaning. Unless the words are of doubtful meaning, or it appears adherence to the strict letter would lead to injustice, to absurdity, or to contrary provisions, we are powerless to search for another meaning."

*Id.* (quoting *Consolidated Freightways Corp. v. Nicholas,* 258 Iowa 115, 119–20, 137 N.W.2d 900, 903–04 (1965)).

■ In attributing to section 20.9 subjects their "ordinary and commonly understood meaning," we look to a variety of sources for definitional guidance. In the past we have utilized Webster's Dictionary for a definition of "wages" under section 20.9. *See City of Fort Dodge,* 275 N.W.2d at 396; *Charles City Educ. Ass'n v. PERB,* 291 N.W.2d 663, 668 (Iowa 1980); *Fort Dodge Community Sch. Dist. v. PERB,* 319 N.W.2d 181, 183 (Iowa 1982)—all adopting the definition of "wages" as set out in *Webster's New International Dictionary* (2d ed. 1952). On other occasions an evinced legislative intention controls our definition of the section 20.9 subject. *See Charles City Community Sch. Dist.,* 275 N.W.2d at 773 (looking to Iowa Code chapter 279 for the meaning of the section 20.9 term "insurance"); *see also Saydel Educ. Ass'n v. PERB,* 333 N.W.2d 486, 488 (Iowa 1983) (The term "procedures," as used in the section 20.9 terms "transfer procedures," "evaluation procedures," and "procedures for staff reduction" is to be interpreted broadly and includes substantive criteria. We recognized the term "procedure," as it is used in other contexts in the PERA, "clearly contemplates reference to substantive criteria."). We determine on a case-by-case basis whether the proposal at issue logically belongs in a section 20.9 mandatory bargaining category, or whether the proposal falls within the broad sphere of management rights reserved to public employers under section 20.7. Iowa

Code § 20.7; *see Charles City Community Sch. Dist.*, 275 N.W.2d at 766; *Clinton Police Dep't Bargaining Unit v. PERB*, 397 N.W.2d 764, 767 (Iowa 1986). This analysis is tempered by our predisposition toward construing the scope of section 20.9 mandatory bargaining subjects restrictively. *See Charles City Community Sch. Dist.*, 275 N.W.2d at 773.

Whatever the form of the proposal, our only task is to determine whether the proposal, *on its face*, fits within a definition-ally fixed section 20.9 mandatory bargaining subject. *See Clinton Police*, 397 N.W.2d at 766. In determining the scope of the topic of a disputed proposal we look to what the proposal, if incorporated through arbitration into the collective bargaining contract, would bind an employer to do. *See Charles City Community Sch. Dist.*, 275 N.W.2d at 774. We take caution to read proposals literally as they come before us. *Clinton Police*, 397 N.W.2d at 766. "It is not for the PER Board or a court on judicial review to rewrite the parties contract proposals." *Id.* Moreover, we "do not decide whether a particular contract proposal is fair or financially reasonable and leave those determinations to the parties or the arbitrator.... We look only at the subject matter and not the merits of the proposals at issue." *Charles City Community Sch. Dist.*, 275 N.W.2d at 769.

## IV. *Contentions of Parties.*

Underlying the dispute over each proposal is a question regarding the manner in which the interests of public employees under section 20.7 and public employers under section 20.9 legally relate. Any time the interests of employees under section 20.9 conflict with the interests of employers under section 20.7, the State argues, the employer's section 20.7 interests should prevail. The State relies on our decisions in *Charles City Community Sch. Dist.*, and *Clinton Police Dep't Bargaining Unit* for support of their argument.

Both PERB and AFSCME, on the other hand, argue that unless the subject matter of a disputed proposal substantially interferes with a public employer's section 20.7 interests, the proposal is a mandatory subject of bargaining.

In support of their advocacy of a "substantial interference" balancing test, AFSCME and the PERB cite our decisions in *Clinton Police* and *Charles City Education Association.* *See Clinton Police*, 397 N.W.2d at 764; *Charles City Educ. Ass'n*, 291 N.W.2d at 666. Additionally, they cite the PERB's own decisions employing this test. *See City of Iowa City*, 82 P.E.R.B. 1892; *City of Burlington*, 90 P.E.R.B. 3876.

Integrally related to these arguments, but necessarily severed for the purposes of our own analysis, is a question regarding what the "predominant characteristic" of each proposal is. The State argues each proposal predominantly concerns subjects reserved as prerogatives of employers under section 20.7. AFSCME argues the proposals in dispute predominantly concern mandatory subjects of bargaining under section 20.9. According to the PERB the proposals generally concern the operation of labor/management committees. However, the PERB argues we should look to the "substantive purpose" of each labor/management committee proposal to determine its negotiability.

Specific definitional issues are also raised by AFSCME. With regard to proposal 2, the PERB held:

[i]n order to be considered mandatory under the Section 9 category "health and safety," established case law requires that a contract proposal must bear a direct relationship to the health and safety of employees *as a means of protecting employees beyond the normal hazards inherent in their work,* so long as there is not a substantial interference with the duties and obligations of public officials to set the basic policies by which government accomplishes its mission and the methods by which those policies are implemented.

(Emphasis added.) AFSCME contends no legal authority exists for the proposition that "health and safety" proposals are mandatory subjects of bargaining only if they are limited to subjects beyond the normal health hazards inherent in the work.

In addition, AFSCME argues proposals 7 and 9 concern "procedures" for implementing mandatory subjects of bargaining.

AFSCME contends these proposals fall under our broad definition of the term "procedure" as defined in *Saydel Education Association, Aplington Community School District v. Iowa Public Employment Relations Board, Northeast Community School District v. Public Employment Relations Board,* and *City of Dubuque v. Iowa Public Employment Relations Board. See Saydel Educ. Ass'n,* 333 N.W.2d at 488; *Aplington Community Sch. Dist. v. PERB,* 392 N.W.2d 495, 499 (Iowa 1986); *Northeast Community Sch. Dist. v. PERB,* 408 N.W.2d 46, 49, 51 (Iowa 1987); *City of Dubuque v. PERB,* 444 N.W.2d 495, 497 (Iowa 1989).

With respect to Proposal 16, the State argues that even if the predominant characteristic of the proposal falls within the section 20.9 mandatory bargaining subject of "job classifications," the proposal is nonetheless permissive. The State contends section 20.9 and chapter 19A create an exception for it with respect to their mandatory duty under section 20.9 to bargain over proposals concerning "job classifications." The State argues chapter 19A grants it, as an employer, exclusive authority over the subject of job classifications.

The State finds authority for its argument in the second paragraph of section 20.9 which excludes from the list of mandatory bargaining subjects certain aspects of the state merit system established in chapter 19A. *See* Iowa Code § 20.9. Moreover, the State argues, the language of various provisions of chapter 19A augments its argument.

The PERB contends the legislature created no such blanket exception for the State under either section 20.9 or Iowa Code chapter 19A.

AFSCME argues that reading an exception into section 20.9 via chapter 19A is an unreasonable construction of the two statutes. AFSCME reminds the court that section 20.9 is to be strictly construed. Moreover, AFSCME argues chapter 19A is filled with legislative directives to entities covered by the act not to enact rules conflicting with the provisions of chapter 20.

Finally, the State argues proposal 16, if ruled a mandatory subject of bargaining, irreconcilably conflicts with the Iowa comparable worth statute, as originally enacted. 1983 Iowa Acts, ch. 170 § 2. Section 2 of the comparable worth statute mandated conducting a study "for the purpose of establishing an evaluation of jobs under the merit employment system on the basis of their comparable worth, with particular attention given to jobs predominantly held by women and jobs predominantly held by men." *Id.* By requiring it to bargain over a proposal requiring a study of wage pay grades and job classifications within bargaining units, the State argues they are placed in a position of irreconcilable conflict with the original comparable worth statute provisions mandating a study of similar topics.

V. *Analysis.*

■ We initially address the parties' arguments regarding the utility of a balancing test in resolving negotiability questions under chapter 20.

Any balancing of interests should occur only when a section 20.9 subject escapes easy definition. A balancing of the employer section 20.7 interests and the employee section 20.9 interest is unnecessary in most cases. *See City of Fort Dodge,* 275 N.W.2d at 396–98; *Fort Dodge Community Sch. Dist. v. PERB,* 319 N.W.2d 181, 182–84 (Iowa 1982); *Saydel Educ. Ass'n,* 333 N.W.2d at 489; *Aplington Community Sch. Dist.,* 392 N.W.2d at 499; *Northeast Community Sch. Dist.,* 408 N.W.2d at 50; *City of Dubuque,* 444 N.W.2d at 497; *Sioux City Police Officers' Ass'n v. City of Sioux City,* 495 N.W.2d 687, 692 (Iowa 1993). *Compare Charles City Community Sch. Dist.,* 275 N.W.2d at 774–75; *Charles City Educ. Ass'n,* 291 N.W.2d at 666–67; *Clinton Police,* 397 N.W.2d at 766–67.

VI. *Proposals 2, 9, and 16.*

■ Turning to an analysis of the specific proposals at issue, we first consider together proposals 2, 9, and 16. These proposals predominantly concern the establishment and operation of labor/management committees. AFSCME argues we should look to the "substantive purpose" of the proposed labor/management committees to properly frame the

overall proposal topic. With respect to proposal 2, AFSCME contends the substantive purpose of the proposed committee is "health and safety." Because "health and safety" is a section 20.9 mandatory bargaining subject, AFSCME contends the proposal should be ruled mandatory. With respect to proposal 9, AFSCME contends the substantive purpose of the committee is "vacations"—also a section 20.9 mandatory bargaining subject. With respect to proposal 16, AFSCME contends that because the scope of the proposed committee is limited to the discussion and study of mandatory bargaining subjects, the proposal should be ruled a mandatory subject of bargaining.

At the outset we note that almost any proposal, depending on how it is drafted, could point with some comfort to section 20.9 as authority for a contention that the proposal is a mandatory subject for negotiation. When framing the scope of a disputed proposal topic, we are concerned with determining what the employer would be bound to do if a proposal were taken to arbitration and incorporated into a collective bargaining agreement. *See Charles City Community Sch. Dist.*, 275 N.W.2d at 774.

The PERB's approach in *Andrew Community School District* is to see if the proposal deals with any specific subject listed as a topic of mandatory bargaining under section 20.9. *Andrew Community Sch. Dist.*, 84 P.E.R.B. 2629. Under this analysis, if a section 20.9 subject is listed or substantively implicated, the procedural proposals through which the mandatory subject to be negotiated is reached are irrelevant. We believe this view ignores the reality of the proposals offered for negotiation and broadens the scope of the topics enumerated by the legislature as mandatory bargaining subjects. Moreover, it decides whether a proposal is one of mandatory bargaining by merely looking for the topical word as listed in section 20.9, virtually a mechanical exercise.

■ At the same time, we are chary about focusing solely on the "substantive purpose" of a proposal, lest an evaluation of the merits of a proposal be required. We will not engage in a debate or resolution of the merits of a contract proposal. *See Clinton Police,*

397 N.W.2d at 766; *Charles City Educ. Ass'n,* 291 N.W.2d at 666; *Charles City Community Sch. Dist.,* 275 N.W.2d at 769.

If incorporated into a collective bargaining agreement, proposals 2, 9, and 16 would require the State to establish and operate labor/management committees. The "establishment and operation of labor/management committees" is therefore the predominant characteristic of these proposals. Whether the "substantive purpose" of the labor/management meeting concerns "health and safety," "vacations," or any other mandatory bargaining subject, or whether the "substantive purpose" of the committees impinge on employer section 20.7 rights is not the issue. Rather, the issue is whether proposals to establish and operate labor/management committees are mandatory subjects of bargaining under section 20.9.

The establishment and operation of labor/management committees for any purpose is not specifically listed as a mandatory subject of bargaining under section 20.9. We construe the scope of each item on the "laundry list" of mandatory bargaining subjects narrowly. *See Charles City Community Sch. Dist.,* 275 N.W.2d at 773. Therefore, we hold proposals 2, 9, and 16 are permissive subjects of bargaining.

### VII. *Staffing—Vacation Issue.*

■ We also note that AFSCME in proposal 9 seeks mandatory bargaining on the issue of discussing the number of employees that can be on vacation at the same time. The State argues that requiring it to bargain on this proposal interferes with several of the enumerated rights reserved to it as set forth in section 20.7, subparagraphs (1), (4), (6), and (7). The subjects of mandatory bargaining defined in section 20.9 and the enumerated rights reserved to public employers in section 20.7 are not mutually exclusive. Virtually all of the mandatory subjects of collective bargaining impact in some way on the reserved rights of public employers. Although we have determined by our prior analysis that proposal 9 is a permissive subject of bargaining, we believe that the

same result would obtain even if a balancing of respective interests approach is used.

The PERB determined and the district court agreed that proposal 9 was a mandatory subject of bargaining. Reliance for support was placed on *State of Iowa*, 81 P.E.R.B. 1846 and 1855. The proposal in *State of Iowa* provided:

Capitol Security Officers' vacations shall be scheduled by seniority. All employees must submit by April 1st of the calendar year their preferred vacation dates. In case of date conflicts, seniority shall prevail.

The State of Iowa proposal is distinguishable from proposal 9. The State of Iowa proposal included no provision requiring management to *discuss* the number of employees who would be on staff during vacation periods. It only related to the procedures for determining what dates are sought by employees for vacations and which employee would be entitled to take vacation during a period where more than one employee chooses the same dates. In contrast to the State of Iowa proposal, proposal 9, by requiring the State to work with the union on staffing levels during vacation periods, invades the employer's exclusive section 20.7 rights to maintain the efficiency of governmental operations, direct the work of public employees, determine and implement the methods, means, assignments, and personnel by which the public employer's operations are to be conducted, and take such actions as may be necessary to carry out a mission of the public employer.

The district court, in the instant case held that the predominant characteristic of proposal 9 relates to vacations within the scope of section 20.9. The district court, however, did not harmonize the section 20.9 employee rights with the section 20.7 employer rights, the second subordinate inquiry sometimes required in determining whether a proposal constitutes a mandatory subject of bargaining. *Charles City Educ. Ass'n*, 291 N.W.2d at 666–67. The predominant characteristic of proposal 9 is clearly staffing, the determination of how many employees will be available for work during vacation periods. When weighed against the union's interests in discussing the number of employees to be on vacation at a given time, the employer's exclusive rights in maintaining the efficiency of governmental operations during vacation periods must take precedence. Otherwise, the word "exclusive" will lose its ordinary meaning, and the employer will lose its ability and right to maintain the efficiency of governmental operations. *See Charles City Community Sch. Dist.*, 275 N.W.2d at 775.

We have consistently held that collective bargaining proposals which predominantly concern the issue of staffing constitute permissive subjects of bargaining. *See Clinton Police*, 397 N.W.2d at 767 (proposal requiring study and development of guidelines for backup assistance in emergency situations, while related to the mandatory subject of safety on the job, was predominantly an issue of manpower); *City of Ottumwa*, 81 PERB 1891 (1981) (proposal requiring city to negotiate whether to hire two officers each year was permissive as relating to staffing, despite having health and safety implications); *City of Newton*, 78 PERB 1322 (1978) (proposal requiring three officers on a shift at all times, although safety related, related predominately to the staffing of the police department); *City of Dubuque*, 77 PERB 964 (1977) (proposal calling for all two-person patrol cars, or alternatively, a minimum of eleven one-person cars, was permissive because within management determination and governmental policy bearing on the extent and quality of service to the public, even though the safety of any individual policeman could be enhanced by the proposal). Proposal 9 in the case at bar primarily relates to staffing and is therefore a permissive subject of bargaining.

VIII. *Proposals 7 and 10.*

Proposal 7 calls for the employer State to allow a paid leave of absence to several union representatives to attend labor/management meetings. Those meetings would be held to discuss mandatory subjects of bargaining.

Proposal 10 is similar. It would grant a paid leave of absence to the union president or designee to attend labor/management meetings such as LEECALM and QCALM.

AFSCME believes both proposals are proper subjects of mandatory bargaining because "leaves of absence, are listed in section 20.9 as a mandatory topic." Consistent with our analysis of proposals 2, 9, and 16, we look at these proposals for the predominant characteristic of the subject matter. In both proposals 7 and 10 the subject matter to be negotiated is whether a leave of absence for the purpose stated must be granted to employees and if granted, with or without pay. By this analysis, we hold that proposals 7 and 10 come within the statutory category of mandatory subjects of negotiation under section 20.9.

### IX. *Procedures Argument.*

 AFSCME claims that because proposals 7 and 10 are procedures for implementing mandatory subjects of bargaining, they are for this reason mandatory bargaining subjects. We have defined the term "procedure" broadly in our prior cases interpreting section 20.9. *See Saydel Educ. Ass'n,* 333 N.W.2d at 488–89; *Aplington Community Sch. Dist.,* 392 N.W.2d at 499; *Northeast Community Sch. Dist.,* 408 N.W.2d at 49; *City of Dubuque,* 444 N.W.2d at 497. We held in each of these decisions the term "procedure," as used in PERA, contemplates substantive criteria. However, our decisions are limited to interpreting this term in conjunction with its use in the section 20.9 subjects "transfer procedures," "evaluation procedures," "procedures for staff reduction," and "grievance procedures." *Id.* By no means have these decisions created a new section 20.9 mandatory bargaining subject entitled "procedures for implementing mandatory subjects of bargaining." Therefore, we find wholly without merit AFSCME's argument that each proposal is a mandatory subject of bargaining because it is a "procedure for implementing a mandatory subject of bargaining."

### X. *Job Classifications.*

 Although we hold proposal 16 is a permissive proposal for negotiation we now address the State's argument regarding "job classifications" because it will likely arise again. The State claims that section 20.9 contains an exception that makes issues of "job classification" totally exempt from mandatory bargaining. The argument is based on the State's construction of the second paragraph of section 20.9. That paragraph states:

Nothing in this section shall diminish the authority and power of the department of personnel, board of regents' merit system, Iowa public broadcasting board's merit system, or any civil service commission established by constitutional provision, statute, charter or special act to recruit employees, prepare, conduct and grade examinations, rate candidates in order of their relative scores for certification for appointment or promotion or for other matters of classification, reclassification or appeal rights in the classified service of the public employer served.

The PERB and the district court held that the above quoted paragraph of section 20.9 was intended to be read to exempt the department of personnel from bargaining over "rating candidates ... for other matters of classification, reclassification or appeal rights in the classified service of the public employer served." The State argues that chapter 19A, creating the department of personnel, and the above quoted language of section 20.9 create an exception to the list of subjects of mandatory bargaining contained in section 20.9. The State construes the second paragraph of section 20.9 as though it read, "nothing in this section shall diminish the authority and power of the department of personnel ... for other matters of classification, reclassification or appeal rights in the classified service of the public employer." The State argues that there are four rather than three categories of subjects that are exclusively reserved to the department of personnel and other public bodies for their decision making. "Job classification" would be included under this argument in the fourth reserved category by the phrase "other matters of classification."

 We believe that a plain reading of section 20.9 reveals only three functions are reserved to the exclusive control of the personnel department. These are recruiting employees, preparing, conducting, and grad-

ing examinations and rating candidates for certification or classification. We make every effort to harmonize the provisions of chapter 19A and chapter 20. *See Goergen v. State Tax Comm'n*, 165 N.W.2d 782, 785–86 (Iowa 1969); *State Employees' Ass'n v. New Hampshire. Pub. Employee Labor Relations Bd.*, 118 N.H. 885, 397 A.2d 1035, 1038 (1978). We do not find from the language here considered in the second paragraph of section 20.9 any indication of a legislative intent to remove automatically "job classifications" from the "laundry list" of mandatory bargaining subjects under section 20.9. We hold that "job classifications" is a proper subject of mandatory bargaining under section 20.9, notwithstanding the language of the second paragraph of that section. The PERB and the district court correctly construed the second paragraph of section 20.9.

We have considered all other arguments of the parties and deem it unnecessary to address them, given our discussion herein of the law controlling this decision. The decision of the district court is affirmed in part and reversed in part.

**AFFIRMED IN PART AND REVERSED IN PART.**

All Justices concur except CARTER, J., who concurs specially.

CARTER, Justice (specially concurring).

I concur in the ultimate conclusions of the court as to whether the five proposals under review are subjects of mandatory or permissive bargaining under the Public Employment Relations Act. I believe, however, that in reaching these results the court gratuitously expresses its views on many matters not necessary to the decision. One of these expressions of opinion is not only gratuitous, it is also erroneous.

The court properly disposes of proposal 9 on the basis that it relates to the establishment of a labor-management committee and thus facially falls outside any of the designated topics of mandatory bargaining. Not being content to stop at this point, the court goes on to add an entire division to its opinion, which concludes that the determination of "the number of employees within each classification and work unit that may be on vacation at any given time" is within the employer's exclusive domain under Iowa Code section 20.7. I strongly disagree with that conclusion.

Obviously, an employer may not use the services of an employee while that employee is on vacation. As a result, almost all aspects of employee vacation impact in some manner on the employer's ability to direct the work. That this is so is hardly a secret and had to have been within the contemplation of the legislature when it included vacation as a mandatory bargaining topic under section 20.9. The so-called "substantial interference" test that the court now employs to defeat compulsory bargaining of a particular aspect of vacation policy is merely a substitution of the court's judgment for that of the General Assembly.

The court correctly recognizes, but then disregards, the proposition that these determinations are to be made on the basis of "whether the proposal, on its face, fits within a definitionally fixed section 20.9 mandatory bargaining subject." Notwithstanding the fact that a "definitionally fixed" test would lead to a different result, the court has separated the topic of vacation policy into isolated categories, some of which are relegated to the public employer's sole discretion.

In the absence of a determination of this issue in a collective bargaining agreement it is a matter that employers would logically wish to have settled in some controlling policy directive. If not included as an item of bargaining, the public employer will in all likelihood unilaterally issue such policy directives. This does not alter the fact that the topic that is being dealt with is both definitionally and functionally "vacation policy." Under a correct application of section 20.9, all aspects of vacation policy are a topic of mandatory bargaining.